(68 N. W. Rep. 81.)

---

AMOS E. TULLIS *vs.* JAMES A. RANKIN.

Opinion filed July 2nd, 1896.

**Expert Evidence.**

> Where a surgeon, shown to be duly qualified in this profession, testifies fully before the jury as to the condition in which he found a limb that had previously been amputated, he may properly be asked what, in his opinion, was the cause of the condition in which he found the limb.

Appeal from District Court, Stutsman County; *Rose,* J.

Action by Amos E. Tullis against James A. Rankin. Judgment for defendant. Plaintiff appeals.

Reversed.

*M. A. Hildreth* and *J. A. Knauf,* for appellant.

*E. W. Camp,* for respondent.

BARTHOLOMEW, J. This was an action for damages for malpractice in the amputation of a leg. There is but one question in

the case, although presented in a variety of forms, and it is this: Is is legally competent, in order to show malpractice, for a surgical expert, with the results of a surgical operation performed nearly two years prior before him, either through his own personal examination and investigation of that result, or through an hypothetical question placing the results properly before him, to give an opinion as to the cause or causes that produced the results? The trial court held that it was not. We reach the opposite conclusion, while admitting that the question is close, and that authorities can be found that give support to the ruling of the trial court. The authorities are not uniform. Each case seems to have been ruled to some extent by its own attendant circumstances. Courts, as a rule, entertain an aversion to expert testimony, particularly medical and surgical expert testimony, and experience no doubt warrants the aversion, yet it is well understood that expert testimony is often indispensable; cases must be decided upon that class of testimony. Its weight or lack of weight may often be matter of embarrassment for a jury, but courts ought not to exclude it for that reason. There are, cases where a given result might be produced by so many different causes, and of so nearly equal probability, that it might be very difficult to assign the true cause. Yet where it is a matter that must be determined from scientific investigation and information, and from that only, it is difficult to see why a witness who has shown himself possessed of the requisite scientific knowledge should not be allowed to state what, in his opinion, was the cause of the effect. Of course, the weight to be given to the opinion might be but little, but a party ought to be permitted to present it. Other cases may arise where, from a scientific standpoint, a certain effect could be produced only from one cause. In such a case no one would question but that the scientist might be asked what, in his opinion, was the cause of the effect; and yet the inherent nature of the testimony is not different in the two cases. It differs only in the weight to be given to it. This view of the law would seem to be somewhat opposed to the views expressed

in *Spear* v. *Hiles*, 67 Wis. 361, 30 N. W. 511. But that case does not purport to announce any general rule. Its facts were exceptional. It was an action for malacious prosecution, brought by a woman who had been arrested and imprisoned. By the expert testimony the plaintiff sought to establish a fact to augment her damages. The court held that it was not a proper element of damage, but also held that the expert could not give his opinion that a certain condition was the result of a certain cause, because it was common knowledge that so many other causes might have produced the same result. *Noonan* v. *State*, 55 Wis. 258, 12 N. W. 379, is also, perhaps, an authority in respondent's favor. *Hanselman* v. *Carstens*, 60 Mich. 187, 27 N. W. 18, cited by respondent, is not in point, as the court was then discussing a different question; and *Brant* v. *City of Lyons*, 60 Iowa, 172, 14 N. W. 227, also cited, is, we think, in appellant's favor. Rogers on Expert Testimony, at page 353, thus states the rule: "But an expert, speaking on a question of science, can be asked, in the presence of a given effect, of what causes it either was or might be the resultant. Such an inquiry is not regarded as speculative in any objectionable sense, but is a common and proper mode of examination." And in Lawson, Exp. Ev. 144, it is stated that the opinion of a medical expert may be based upon his acquaintance with the party under investigation, on a medical examination of him which he has made, or upon an hypothetical case stated. And see, also, *Railway Co.* v. *Brady*, (Neb.) 57 N. W. 767; *Railway Co.* v. *Holsapple*, (Ind. App.) 38 N. E. 1107; *Moyer* v. *Railway Co.*, 98 N. Y. 645. These cases and many others show that when the facts are known, and have been testified to by the expert, it is not necessary to put an hypothetical question. See Rog. Exp. Test. 75, and cases cited. In this case plaintiff, who was in the employ of the Northern Pacific Railway Company, had his foot run over and crushed by the cars on May 5, 1893. On that same day his leg was amputated by defendant, and he was sent to the hospital at Brainard, Minn., where he remained for about two months. At that time the wound was not, and

never was, entirely healed, until after the second amputation. The pain never left it, and at times was intense. Finally, in March, 1895, a second amputation was performed, and the limb healed, and all pain ceased. This second amputation was performed by Drs. Vidal, De Puy, and Morse. These gentlemen were severally sworn as expert witnesses for plaintiff. They testified in detail as to the condition of the limb and the patient at the time of the second amputation. After having so testified, each expert witness was asked: "What in your opinion, was the cause of the condition in which you found the limb at the time you made the examination and amputation?" And to Dr. De Puy, an hypothetical question was put incorporating the facts to which plaintiff had testified as to his injury. The witnesses were not permitted to answer. It will be noticed that they were not asked whether or not some specified fact was not the cause. They were left free to assign whatever cause their judgment dictated. It may be conceded, however, that the ultimate object was to show that an improper or unskillful amputation was the cause of the condition. Certainly that was a probable cause. Other circumstances or events might have intervened, and produced the results. But the question did not ask for a mere possibility. We go no further than the facts of this case require. But these opinions, if given as anticipated, would have concluded nothing. They would have gone to the jury for what they were worth. It was still open to the defendant to show that the original amputation was skillfully and properly performed; still open to him to show that other circumstances and events influenced or produced the results; still open to him to show by other expert testimony, if he could, that the opinions of plaintiff's experts were unwarranted in scientific surgery. But the questions as asked should have been answered.

Reversed, and a new trial ordered. All concur.