THE CITY OF BLOOMINGTON

*v.*

LAURA SHROCK.

*Filed at Springfield June 11, 1884.*

1.  EVIDENCE—*medical and other scientific books—whether admissible in evidence before a jury.*  The weight of current authority is decidedly against the admission of scientific books in evidence before a jury, and against allowing them to be read from to contradict an expert, generally. When, however, an expert assumes to base his opinion upon the work of a particular author, that work may be read in evidence to contradict him.

2.  Where a witness was examined as an expert, and gave evidence tending to prove that a party had been guilty of negligence after a fall, in omitting proper care to avoid an abortion, but did not quote from or make any reference to any medical books on the subject, the court allowed counsel, on cross-examination, to ask him if he was acquainted with Playfair, and Bedford, (treatises on midwifery,) and upon his responding in the affirmative, and that they were standard authorities on such questions, the court allowed counsel to read at length from each of those authors, consecutively, and then inquire of the witness whether he agreed with the authors as to the parts so read:  *Held,* that it was error to allow the reading from the books and the questions to be propounded to the witness as to his agreeing with the authors.

3.  Since medical or other scientific books are not admissible as original evidence, it follows they are not admissible on cross-examination, when their introduction is not for the direct contradiction of something asserted by the witness, but simply to prove a different theory.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. JOHN T. LILLARD, for the appellant:

The court below was probably misled by a false interpretation of the rulings in *Chicago Mutual Life Ins. Co.* v. *Ellis,* 89 Ill. 516, where a doctor had stated that he had read text books that he might be able to state why he diagnosed the case as *delirium tremens.*   It was for that reason held that his

knowledge of the question and of the books might be tested by propounding questions to him from the book. Here the appellant elicited nothing from the books. The course pursued in this case is not answered by the decision in 89 Ill. 516, *supra*, for there the doctor had, in chief, professed a knowledge and familiarity with the books, and he was, of course, open to a cross-examination on the books; and as to the jury, it is almost everywhere admitted they are not to be enlightened by the reading of medical works. *Washburn* v. *Cuddihy*, 8 Gray, 430; *Commonwealth* v. *Wilson*, 1 id. 338; *People* v. *Hall*, 48 Mich. 482; *Gale* v. *Rector*, 5 Bradw. 481; *Marshall* v. *Brown*, 50 Mich. 148; *Commonwealth* v. *Sturtevant*, 117 Mass. 122. And see Rogers on Expert Testimony, secs. 181, 182, in the notes of which are cited the above mentioned and many other cases.

Messrs. FIFER & PHILLIPS, for the appellee:

It is proper to read from standard medical works in cross-examining medical experts. (*Connecticut Mutual Life Ins. Co.* v. *Ellis*, 89 Ill. 516.) The books were not given in evidence.

The case of *Marshall* v. *Brown*, 50 Mich. 148, holds that medical books are not admissible in evidence, and in that case the book was sought to be, in effect, introduced in evidence under the guise of asking the witness to approve certain passages read from it. We did no such thing in the case at bar. We simply tested the witness, sifted his scientific pretensions, and elicited the truth. There are many courts which hold that standard medical books may be read in evidence. Other courts hold the contrary. Between the two your honors have taken a ground promotive, we think, of justice, which ought by all means to be maintained, and it is hoped that the doctrine will be enlarged rather than restricted.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action on the case, for negligence, by appellee, against appellant. Appellee, a married woman, was violently thrown down while walking along a sidewalk adjacent to one of appellant's streets, by reason of a defect in the sidewalk, and thereby received injuries which, she claimed, resulted in causing her to have an abortion. It was contended by appellant, upon the trial, that she was guilty of such contributory negligence as to bar her right to recover, in omitting proper care and caution to avoid the abortion,—and this was the most important question upon the trial, although there were other questions of minor consideration contested.

Dr. Luce was called and examined as a witness on behalf of appellant, as an expert, and gave evidence tending to prove that appellee was guilty of negligence in the respect contended by appellant. He quoted from and made reference to no book; but upon his cross-examination, counsel for appellee inquired of him whether he was acquainted with "Playfair," and "Bedford," (treatises on midwifery,) and upon his responding in the affirmative, and that they were standard authorities on questions of this character, counsel proceeded to read at length from each of these authors, consecutively, and then inquired of the witness whether he agreed with the authors as to the parts so read. This was objected to by the counsel for appellant, but allowed by the court, and the witness was required to make answer.

The weight of current authority is decidedly against the admission of scientific books in evidence before a jury, although in some States they are admissible. (1 Greenleaf on Evidence, sec. 440, and note; Wharton on Evidence, sec. 665; Rogers on Expert Testimony, secs. 168, 169, *et seq.*, and cases cited in notes.) And the weight of current authority is, also, against allowing such treatises to be read from, to contradict an expert, generally. (See authorities *supra*,

and *Commonwealth* v. *Sturtevant*, 117 Mass. 122; *Davis* v. *The State*, 38 Md. 15; *The State* v. *O'Brien*, 7 R. I. 336.) Where, however, an expert assumes to base his opinion upon the work of a particular author, that work may be read in evidence to contradict him. This was, in effect, our ruling in *Connecticut Mutual Life Ins. Co.* v. *Ellis, Admr.* 89 Ill. 516; and it was expressly so ruled in *Pinney* v. *Cahill*, 48 Mich. 584, *City of Ripon* v. *Bristol*, 30 Wis. 614, and *Huffman* v. *Click*, 77 N. C. 55. See, also, *Marshall* v. *Brown*, 50 Mich. 148; Rogers on Expert Testimony, sec. 181.

But counsel for appellee insist the ruling of the court below is in exact conformity with the ruling of this court in *Connecticut Mutual Life Ins. Co.* v. *Ellis, Admr. supra.* This is a misapprehension. In that case the witness stated "that he had read text books that he might be able to state why he diagnosed the case as *delirium tremens;*" and it was held "not unfair to the witness to call his attention to the definitions given in the books, of that particular disease, and asking him whether he concurred in the definitions." And it was said: "That is, in no just sense, reading books to the jury as evidence, or for the purpose of contradicting the witness." The source of his professed knowledge was given, and it was allowed to show that he was mistaken, by resorting to that source. In the present case, it has been seen, the course pursued was entirely different. The witness based no opinion which he gave, upon the authority of books, and they were only brought in to impair his evidence on cross-examination.

Where a witness says a thing or a theory is so because a book says so, and the book, on being produced, is discovered to say directly to the contrary, there is a direct contradiction which anybody can understand. But where a witness simply gives his opinion as to the proper treatment of a given disease or injury, and a book is produced recommending a different treatment, at most the repugnance is not of fact, but of

theory; and any number of additional books expressing different theories, would obviously be quite as competent as the first. But since the books are not admissible as original evidence in such cases, it must follow that they are not admissible on cross-examination, where their introduction is not for the direct contradiction of something asserted by the witness, but simply to prove a contrary theory.

We think the court erred in admitting this evidence, and for that error the judgment is reversed, and the cause remanded.

*Judgment reversed.*