### Chicago City Railway Co. v. Annie M. Douglas.

1.   EVIDENCE—*Reading from Medical Works.*—It is not competent for counsel to produce and read from medical works, much less is it competent to attempt to prove the contents of such books by witnesses testifying solely ⁅from memory; such evidence is mere hearsay, and incompetent.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge presiding.   Heard in this court at the October term, 1901.   Reversed and remanded.   Opinion filed October 27, 1902.

WILLIAM J. HYNES and WATSON J. FERRY, attorneys for appellant; MASON B. STARRING, of counsel.

JOHN F. WATERS and JOHNSON & PEGLER, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court. '

This is an appeal from a judgment for the sum of $7,500, recovered by appellee in an action for personal injuries alleged to have been occasioned by appellant's negligence. The verdict was for $10,000, but appellee remitted $2,500. The declaration avers, in substance, that the plaintiff was a passenger on one of defendant's cars, and when the car arrived at the corner of Sixty-first and State streets in the

city of Chicago, plaintiff signaled the conductor to stop the car, so that she might alight therefrom; that defendant stopped the car, and while plaintiff, with all due care and diligence, was attempting to alight therefrom, and before she had sufficient time to alight, the defendant carelessly and negligently started the car, whereby she was forcibly and violently thrown therefrom and was seriously injured, etc.

The only witnesses to the alleged accident were two: the plaintiff, a colored woman, and Shelby Cowan, plaintiff's cousin, also colored. The plaintiff testified that when the car got to State street it stopped to let passengers off; that she attempted to get off, and just as she put her left foot on the platform and attempted to descend to the ground with her right foot, the car gave a sudden jerk, started up, and she fell. This testimony of the plaintiff was corroborated by Cowan. He testified that he was on the same car with the plaintiff, and on the seat next opposite to her when the accident occurred. It was contended by the defendant that Cowan was not on the car at all, and that he did not see the accident, and the evidence as to whether he was on the car or saw the accident was conflicting. Among the serious troubles which the plaintiff claimed resulted from the accident, was a large tumor in her private parts, and difficulty in controlling her urine, the latter difficulty being caused, as appears from the evidence, by the tumor pressing on the bladder.

Over forty witnesses were examined, some of them at great length. The trial occupied from the 10th to the 24th of May, 1900, both inclusive, and the record is very voluminous. In view of the importance of the case, we have carefully read and considered all the evidence, but, owing to its volume and the conclusion we have come to, omit to refer to it specifically.

Mrs. R. W. Evans, a witness called by the plaintiff, testified that she first knew plaintiff about three years before the trial; that she then lived just across the street from plaintiff, and had opportunity to see her move about; that when she first saw her, she got along with two crutches

very poorly, and after awhile she used one, and that she carried her right leg bent. This evidence was material, because plaintiff claimed that her right knee was injured by her fall from the car. In Mrs. Evans' examination in chief by plaintiff's attorney, she testified that on the former trial of the cause she had a conversation with some one in the Ashland block in regard to the case; that he was a tall man with a brown mustache, and she thought his name was Brown; that she was so told; that a subpœna was served on her and she was told to go to Mr. Hynes' office, in the Ashland block, and went there and remained in the office from ten o'clock till four o'clock; that while there the tall man with the brown mustache offered her a dollar, which she refused, saying she was not going to tell lies for anybody; that he said to her that if she would swear that she saw Mrs. Douglas without a crutch, he was willing to pay all of her expenses in court and her car fare. During the course of this examination the following occurred :

" Q.   How do you know it was Hynes' office ?
A.   Because I was directed there and Mr. Hynes' name was on the door.
The Court:   I think it would be competent—anything that was said in his office.
Mr. Hynes:   By anybody ?
The Court:   Yes."

Exceptions were properly preserved. No attempt was made to connect the person who spoke to the witness with Mr. Hynes or with the defendant. It does not even appear that Mr. Hynes was in his office when the witness was there, and it is not claimed by counsel for appellee that he was, or that he knew anything of the circumstance. The following occurred in the examination of the witness :

" The Court:   She said a tall man with a heavy brown mustache.
Mr. Hynes:   How do I know, your Honor, anything about that ?
Mr. Waters :   I do not say that you did."

From the amount offered, which seems to have been witness fees and mileage, an attempt to bribe the witness can

not be charged against the unknown tall man, with the brown mustache; but the evidence shows, as we think, an attempt to suborn the witness to commit perjury. In view of the remark of the court that evidence of anything said by anybody in Mr. Hynes' office was competent, the jury could not well conclude otherwise than that the defendant, the Chicago City Railway Co., had caused the attempt to tamper with the witness to be made; and the suspicion, on the part of the jury, would be natural, that if one witness was thus tampered with, other witnesses might have been. In short, the effect may have been, and probably was, to create prejudice in the minds of the jury against the defendant, and to cause them to discredit the testimony of the defendant's witnesses. The admission of this evidence, in view of the conflict of evidence in respect to material matters, was prejudicial error, which alone is sufficient to require a reversal of the judgment. We have reached this conclusion with much reluctance, as the case has been twice tried, at large expense to the parties and the public; but after very thorough consideration and deliberation, we can not arrive at any other conclusion.

In the examination of Dr. John B. Armstrong, one of the plaintiff's expert witnesses, plaintiff's attorney asked this question: " Can you name any recognized medical authorities that give injuries, blows and inflammation as causes of cystic tumors?" To which the witness answered: " T. Gaillard Thomas speaks of blows being one, and excessive sexual indulgence." This was on direct examination of the witness. On re-direct examination of the same witness the following question and answer occurred: " Q. State whether or not congestions are given in the medical books as one of the existing causes for cystic tumors? A. Yes, sir."

In the direct examination of Dr. Dudley, one of appellant's expert witnesses, he did not refer to any medical author or book as authority for the opinion which he expressed, nor was he asked about any such author or book; but on his cross-examination the following occurred:

"Q. Did you ever read any books on medicine or surgery that gave blows and injuries as a cause of cystic tumors? A. Yes, sir.

Q. There are a number of authors that give blows and injuries as the existing cause for cystic tumors, are there not? A. Yes sir.

Q. But you are not in accord with these authors? A. No, sir."

Other questions as to the opinions of medical authors, and of persons distinguished in the medical profession, were asked and answered by the witness.

The opinions of these witnesses, given on oath, in response to proper questions, were competent evidence, but their testimony as to what others had written or spoken in regard to the subject-matter of the inquiry, was mere hearsay, and incompetent. It would not have been competent for plaintiff's counsel to produce and read to the jury medical books, much less was it competent to attempt to prove the contents of such books by witnesses testifying solely from memory. The following authorities are decisive that the admission of the testimony in question was error: People v. Millard, 53 Mich. 63, 75–77; Galveston, H. & S. A. Ry. Co. v. Hanway (Tex.), 57 S. W. Rep. 695; Boyle v. The State, 57 Wis. 472, 476, *et sequens;* City of Bloomington v. Shrock, 110 Ill. 219.

The furthest the Supreme Court has gone in respect to reading medical works to the jury, is to hold that if an expert bases his opinion on the work of an author, the work may be read in evidence to contradict him. City of Bloomington v. Shrock, *supra.*

The judgment will be reversed and the cause remanded.