## John T. Neiner, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 18,409.

1. DAMAGES—*evidence.* In an action against a street railway company for injuries received in an accident *held,* that the testimony of experts and others proves that the ailments complained of by plaintiff existed prior to the injury and that the injury was not sufficient to produce the ailments shown.

2. WITNESSES—*qualification of experts.* Where a surgeon testifies in an action for personal injuries that some ''gross change'' was going on in plaintiff's nervous system it is error to exclude a question as to whether the condition was of brief origin or was chronic, since the witness is not disqualified to answer because he is making a specialty of surgery.

3. EVIDENCE—*what cross-examination of a physician improper.* In an action for personal injuries, where a physician does not refer to the literature of medical writers in his direct examination, it is error to permit questions on cross-examination as to the standing of various medical writers and as to writings exhibited to the court and shown to the witness.

Appeal from the Superior Court of Cook county; the HON. CLARENCE N. GOODWIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed June 24, 1913.

JOHN E. KEHOE and C. LE ROY BROWN, for appellant; Leonard A. Busby, of counsel.

ADLER & LEDERER, for appellee.

MR. PRESIDING JUSTICE F. A. SMITH delivered the opinion of the court.

This is an appeal from a judgment recovered by appellee, John T. Neiner, against appellant, Chicago City Railway Company, in an action for personal injuries. Appellee claimed that while he was alighting from a street car he was thrown to the ground by the sudden starting of the car of the defendant on which he was riding, and injured.

The declaration contained two counts. Each count alleged that plaintiff was a passenger and that while he was alighting from a street car of defendant on Forty-seventh street at Fairfield avenue in the city of Chicago, the car was negligently started and plaintiff was thrown with force and violence to the ground. The first count avers that the car was at a standstill when plaintiff prepared to alight. The second count alleges that before the car arrived at Fairfield avenue he signalled the servants of defendant that he desired to alight at that point, and that it then and there became and was the duty of the defendant to give the plaintiff an opportunity to safely alight therefrom and then and there stop the car a reasonable length of time to enable the plaintiff to alight, but that the defendant did not regard its duty nor use due care in that behalf, and that while the plaintiff was about to alight therefrom the defendant carelessly and negligently caused the car to be suddenly and violently moved, whereby the plaintiff was thrown with great force and violence from the car to and upon the ground.

The evidence offered by the plaintiff tends to show that he was a passenger on a Forty-seventh street car of the defendant from Indiana avenue to Fairfield avenue, and that the alleged accident took place October 20, 1909, at about four o'clock in the afternoon. The testimony as to the accident was given by plaintiff himself and by one Terven. They say that the plaintiff was thrown from the car to the ground while

he was alighting therefrom at Fairfield avenue. Forty-seventh street at that place was not paved; it was a mere dirt road. There was a ditch on the side of the road next to the sidewalk. Terven testifies that he was on the rear platform of the car, which was a "pay-as-you-enter" car, and observed the plaintiff when he fell from the car, and that when the plaintiff fell, Terven swore at the conductor and jumped off the moving car after it had run about twenty feet. He claims that he went to the plaintiff and reached him a little over ten seconds after Terven had jumped off the car. Terven picked the plaintiff up and with the aid of a stranger, who did not testify, assisted the plaintiff to the home of his father, about one block north of Forty-seventh street. Terven testifies that he found the plaintiff lying beside the ditch on the north side of the roadway about twelve feet from the street car tracks, lying sprawled upon the street, face downward; that plaintiff was conscious when he picked him up.

It appears from plaintiff's testimony that on the day of the accident he discovered no objective injury to his person. On the next day he found a bruise on the lower part of his left leg below the knee, and that about three days after the accident he felt a little soreness at the back of his head when he was combing his hair, though the skin at the back of the head was never broken. He did not know whether his head struck against something when he fell off the car, but that the finding of this slight soreness caused him to believe that he struck his head against something, perhaps some part of the car, and that he then lost consciousness but regained it as soon as Terven picked him up.

The expert testimony in the case tends strongly to show that immediately after the accident the plaintiff was afflicted with multiple sclerosis, and that the principal question of fact toward which the evidence was directed on the trial was whether the ailment com-

plained of was the proximate result of the injury to the plaintiff caused by the defendant's alleged negligence, or whether it existed before the accident.

The day after the accident, the plaintiff went to a doctor in a free dispensary and told her that he had a sore leg and requested treatment. The doctor examined his leg and gave him a salve, and stated to him that she thought the bone was fractured, and, on the advice of the doctor, he went to the Post Graduate Hospital to have an X-ray photograph taken of his leg to see if there was a fracture, but an X-ray was not used. At the hospital he was turned over to Dr. Cubbins in its surgical department by whom he was examined. Dr. Cubbins testified that when the plaintiff came in he noticed he was rather unsteady; that he found upon examination of the injury that it was not a distinct injury; it was not severe enough to cause him to walk in the hesitating manner in which he was walking; that there was nothing serious about the bruise or injury upon the leg. The doctor noticed a certain quivering motion in plaintiff's eyes, and a tremor of his hands, and had him walk and observed that he walked with that peculiar stiff-legged gait which made him very unsteady, and then diagnosed his case as some diffused nervous trouble and took him to Dr. Grinker who was a nerve specialist and had charge of the treatment of nervous diseases at the hospital. Dr. Cubbins observed that the nervous disturbance of the plaintiff was of an unusual type and that his real trouble was of that character rather than the bruise on his leg; and Dr. Cubbins' tentative diagnosis of the trouble was multiple sclerosis, and that a very distinct change was going on in his nervous system.

Dr. Grinker first saw the plaintiff two or three weeks after the injury and found the mark on his leg over the shin bone was simply a discoloration; it was not a deep mark. "There was no injury," he testifies, "to the bone. There was a discoloration of the skin,

extending two or three inches down, showing that there had been something that had gotten well, that is all. I didn't see it, it was all over with at that time." It was somewhere about the middle of November, 1909, that Dr. Grinker first examined the plaintiff, and in some detail testifies to the symptoms which he found, and that he diagnosed the case as multiple sclerosis. Dr. Grinker had also very carefully examined the plaintiff within a week or ten days of the time of the trial of the cause. He testifies that the symptoms he found were substantially the same as those he found originally, except the exaggerated motions and that they were more intense.

The conclusion to be drawn from the evidence in the case is very clear. The actual physical injury sustained by the plaintiff as a result of the negligence of the defendant, if the defendant was negligent, was very light and inconsequential, and further that the early diagnosis of the plaintiff's condition after the accident clearly pointed to the disease of multiple sclerosis. According to the testimony, this disease is not as common in this country as in Europe, and may be said to be not a common disease at all in this country. It is a disease, according to the testimony, of especially slow growth, and yet the manifestations may appear suddenly. Dr. Grinker testified that "multiple sclerosis really means a number of places in the nervous system that are in the form of scars here and there just like the scars on the skin that is cut. It is the tissue or the cells of the body that come in to take the place of what is destroyed,—scars in the nervous system, in the brain, in the spinal cord, in the nerves. It is a disease which when it affects an individual causes symptoms or signs of the disease depending upon the very spot that has been destroyed by the scar which has taken the place of the nerves. * * * The scar is an attempt of nature to fill up spaces that are lost. Where tissues are destroyed,

the scar fills up the gap. The same thing occurs in the skin as does in the nervous system. Where the real nerves do the work and are not there any more the space is taken up by the tissue which is called giamatoses or scar tissue or sclerotic patches, and that tissue is dead forever. There is no work done by those nerves that are destroyed.'' The testimony of all the physicians in the case shows that it is a chronic disease, and comes on slowly from the very nature of the changes that take place in the nervous system. The fair inference to be drawn from the facts and circumstances shown in the evidence and from the testimony of the physicians, is that the disease from which the plaintiff was suffering when he first sought medical advice and was first examined after the accident, could not have resulted from the traumatism which he suffered by the alleged accident. Indeed, it is doubtful, from the evidence, that the disease is caused by traumatism, although there is some evidence that it may be caused by severe traumatism, but there is little doubt, if any, that it could not have been caused by the very slight bruises which the plaintiff suffered at the time of the accident.

In support of the above conclusion there is the testimony of fourteen witnesses who knew and observed the plaintiff for many years prior to the accident; that his gait had been, for at least two years prior to the time of the accident, of the character described by the physicians. The testimony of those witnesses showed that the plaintiff walked with a marked and peculiar lameness, a halting, shuffling, or spastic gait, and that he had a peculiarity of speech, and a peculiar tremor of the hands. Some of the witnesses described his gait as a dragging of his feet, or as if something was ailing in his knees, as an irregular walk, a sort of shuffling. One witness says he was always dragging his feet. The plaintiff testified that he went to the County hospital after he had been examined at the

Post Graduate Hospital, and was there examined by a physician. Dr. Kara testified that he was in the County hospital from December, 1910, as an interne, and that it was his duty to examine patients who applied for assistance at the County hospital. When a patient came there, it was his duty to inquire in detail as to various symptoms and make a record of his condition and the history of the case up to that time; that he examined the plaintiff when he appeared at the County hospital and noted the results of his examination upon a record sheet, which was produced at the trial, and he identified the record shown him as being in his handwriting. Dr. Kara testified to the symptoms of multiple sclerosis and described to some extent the disease and noted the conditions and symptoms testified to by the other physicians, and, among other things, pointed out his statement in the record which says: "Claims that when walking his feet drag. Noticed this trouble in walking about two years ago." This shows that the plaintiff himself knew and stated that he had the same symptoms two years before the accident.

The evidence, taken altogether, strongly tends to prove that the plaintiff was afflicted with the disease for two years prior to the alleged accident in question, and that the manifestations of the disease were so clear that people who knew him or came in contact with him, observed and marked the peculiar symptoms which the plaintiff manifested.

From the expert medical testimony in the case and from the testimony of observers of plaintiff during two or more years prior to the date of the alleged accident, it seems impossible to form the conclusion that plaintiff's disorder was the proximate result of the injury to him caused by the defendant's negligence. The evidence proves by a manifest and decisive preponderance that the ailments complained of by the plaintiff existed prior to the alleged cause of the

injury, and that the injury received by the plaintiff at the time of the accident was not sufficient to produce the ailments shown, and that the disease could not have manifested itself so quickly after the alleged injury if caused thereby.

The verdict is unsatisfactory. If plaintiff's ailments were the proximate result of the injury, the verdict is altogether too small; if the ailments were not the proximate result of the injury, it is manifestly too large.

The court erred in its rulings on evidence. On the direct examination of Dr. Cubbins, the witness testified that there was no question in his mind but that some "gross change" was going on in plaintiff's nervous system at the time of his examination. Defendant's counsel then asked:

"Q. And from your examinations of the conditions in which you found him, what would you say as to the length of time it had existed? From your judgment about it as to whether it was of brief origin or whether it was chronic?"

An objection was sustained to this question on the ground that the witness was not qualified to answer. We think this was an erroneous ruling. The witness was not disqualified because he was making a specialty of surgery.

When Dr. Kuh was on the stand, his direct examination had not referred in any way to the literature of medical writers on the question whether falls or other forms of trauma were regarded as causes of multiple sclerosis. On cross-examination the court permitted the plaintiff to interrogate Dr. Kuh at length on the standing of various medical writers and as to the contents of some of their writings exhibited to the court and shown to the witness. We think this was improper and erroneous. *Weyh v. Chicago City Ry. Co.*, 148 Ill. App. 165; *Chicago City Ry. Co. v. Douglas*, 104 Ill.

App. 41; *Union Pac. Ry. Co. v. Yates*, 25 C. C. A. 103, 79 Fed. 584.

The court should have sustained a motion for a new trial. The judgment is reversed and the cause is remanded.

*Reversed and remanded.*