(No. 10798.—Judgment affirmed.)

JESSE WILCOX, Admr., Defendant in Error, *vs.* THE INTERNATIONAL HARVESTER COMPANY OF AMERICA, Plaintiff in Error.

*Opinion filed April 19, 1917—Rehearing denied June 6, 1917.*

1. APPEALS AND ERRORS—*when Supreme Court will not weigh the evidence.* Peremptory instructions are properly refused in an action for personal injury where there is sufficient evidence in the record from which, if it stood alone, the jury might, without acting unreasonably in the eye of the law, find that each material allegation had been proved, and in reviewing a judgment of affirmance by the Appellate Court the Supreme Court will not weigh the evidence to determine the correctness of the verdict.

2. EVIDENCE—*right to contradict an expert medical witness on cross-examination by reading extracts from the books.* Scientific books are not admissible in evidence as proof of the facts they set forth, but if a witness assumes to base his opinion on such books extracts may be read from them to contradict him, and it is not necessary that he state the authorities for his opinion in his direct examination, but he may be questioned on cross-examination as to the basis of his opinion and then contradicted by extracts from the authorities named.

3. PRACTICE—*when counsel waives right to object to opening and reading of verdict in absence of jury.* Where counsel for both parties, after retirement of the jury, agree that the verdict may be signed and sealed and left with the bailiff, whereupon the judge, after counsel have gone, directs the clerk to enter an order to that effect, including the statement that the polling of the jury is waived by agreement, and upon convening of court the next morning states to both counsel that such order has been entered upon his understanding that the polling of the jury had been waived, no objection being made to such statement or to the opening and reading of the verdict, the right to object to the opening, reading and recording of the verdict in the absence of the jury is waived.

4. SAME—*what situation does not warrant entry of judgment nunc pro tunc.* Where the plaintiff in a personal injury suit dies after a verdict in her favor is returned but before judgment is entered, the court is not warranted in entering a judgment *nunc pro tunc* as of the date of the verdict, and the entry of such a judgment does not affect the situation caused by the plaintiff's death.

5. NEGLIGENCE—*rule as to survival of action where death results from cause other than injury sued for.* If the plaintiff in a

suit to recover damages for personal injuries dies before final judgment from some cause other than the injuries for which damages are sought the cause of action survives to the personal representative of the deceased plaintiff.

6. SAME—*rule as to survival of action where death results from the injury sued for.* If the plaintiff in a suit to recover damages for personal injuries dies before final judgment as a result of the injury the particular suit abates and cannot be further prosecuted, but the cause of action is extended and may be prosecuted by the administrator as trustee named by statute for those who had a pecuniary interest in the life of the deceased, the measure of damages being limited to such interest.

7. SAME—*when right to object to judgment on the ground that death of plaintiff abated the suit is waived.* Where the plaintiff in an action for damages for alleged lead poisoning dies after verdict and before final judgment, the defendant cannot contend, on appeal, that the trial court erred in entering judgment on the verdict after the substitution of the administrator as plaintiff, where, instead of filing a plea in abatement, it made a motion for a new trial and in arrest of judgment, contending that the original plaintiff died from pernicious anæmia, it having been the defendant's claim throughout the trial that the plaintiff was suffering from such disease instead of lead poisoning.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. BENJAMIN W. POPE, Judge, presiding.

EDGAR A. BANCROFT, and DAVID A. OREBAUGH, (F. H. SCOTT, of counsel,) for plaintiff in error.

CHARLES C. SPENCER, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Mary V. Sheetz brought suit against the International Harvester Company of America, plaintiff in error, in the circuit court of Cook county, to recover damages for alleged lead poisoning claimed to have been contracted by her while employed by plaintiff in error as a compositor

in the city of Chicago. A verdict was returned in favor of Miss Sheetz December 31, 1914, for $10,000. On January 3, and before judgment was rendered on the verdict, she died. On January 23 her death was suggested of record, and Jesse Wilcox, who had been appointed administrator of her estate, was substituted as plaintiff. The court required a *remittitur* of $2000, and on February 6, 1915, judgment was entered for $8000 *nunc pro tunc* as of December 31, 1914. Upon appeal to the Appellate Court for the First District the judgment was affirmed. The judgment of the Appellate Court has been brought here for review by writ of *certiorari.*

The declaration consists of six counts, four of them being based upon the Occupational Diseases act of 1911 and two of them being common law counts. Defendant in error does not rely upon the common law counts but relies wholly upon the counts based upon the Occupational Diseases act. As it is not contended that the proof was sufficient to warrant recovery under the common law counts we will consider the case only in reference to the other counts of the declaration. The declaration alleges, in substance, that the work carried on in the shop of plaintiff in error produced diseases peculiar thereto and subjected the employees to the danger of lead poisoning; that said diseases could be easily prevented by the adoption of reasonable and approved devices and means, and that plaintiff in error willfully violated the statute in that it did not adopt reasonable means and devices for the protection of its employees from lead poisoning, whereby defendant in error's intestate contracted that disease.

Motions were made at appropriate times for a peremptory instruction, each of which was denied. Three questions of fact arose in the case, each of which involved the ultimate right of defendant in error's intestate to recover: (1) Whether lead poisoning is incident or peculiar to the work of a setter or distributer of type within the

meaning of the statute; (2) whether plaintiff in error used such care in providing reasonable and approved devices and means for the prevention of lead poisoning as is required by the statute; and (3) whether defendant in error's intestate was suffering from lead poisoning. It is contended on the part of plaintiff in error that there is no evidence in the record which fairly tends to prove either of these three questions of fact. While the evidence offered on the part of defendant in error's intestate on some of these questions was meager and the evidence offered on the part of the plaintiff in error was of such a character as to appeal strongly to a tribunal vested with power to determine questions of fact, it will serve no useful purpose to go into an analysis of the evidence. There is sufficient evidence in the record on behalf of defendant in error's intestate on each of these questions of fact from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that each had been proven. The peremptory instructions were therefore properly refused. As all questions of fact which were submitted to the jury are conclusively settled by the judgment of the Appellate Court, we are not permitted to weigh the evidence or inquire into the correctness of the verdict of the jury.

It is insisted that the trial court erred in permitting counsel for the defendant in error's intestate, on the cross-examination of two of the medical witnesses called by the plaintiff in error, to read in the hearing of the jury extracts from various medical authorities on lead poisoning for the purpose of contradicting those witnesses when they had not on their direct examination based their testimony on such authorities. On his direct examination Dr. Fisk, one of these witnesses, based his opinion both on his own experience and upon the authorities without stating what books he had read on the subject. Upon his cross-examination he was asked to state what authorities he had read upon which he based his opinion in part. He stated what these

authorities were, and counsel then, in framing further questions, asked the witness if the authorities did not make statements contrary to the opinion he had given, reading from the books in asking the questions. Dr. Hamilton, the other witness referred to, in her cross-examination admitted that in giving her opinion she had relied, in part, upon the work of a certain statistician, and the same procedure was followed in her further cross-examination to show that this author had made statements in conflict with the opinion she had expressed. Scientific books are not admissible in evidence as proof of the facts they set forth, but if a witness assumes to base his opinion on such books extracts may be read from them to contradict him. (*City of Bloomington* v. *Shrock,* 110 Ill. 219; *Ullrich* v. *Chicago City Railway Co.* 265 id. 338.) Having expressed an opinion upon a matter material to the issue, a medical expert witness may be cross-examined as to whether that opinion is based upon personal experience or upon books which he has read, and this whether he has stated in his direct examination the basis of his opinion. Should he testify for the first time upon cross-examination that his opinion is based upon what he has read, counsel has the same right to interrogate him as to the authorities upon which he relies, and then contradict him with those authorities, if he can, the same as if he had testified in direct examination that his opinion was based upon such authorities. The mere fact that the witness on direct examination has expressed his opinion generally will not foreclose counsel, upon cross-examination, from eliciting from the witness the basis of his opinion.

It is contended that no legal verdict was returned by the jury. The arguments in the case were completed during the forenoon of December 30, 1914. The jury were then instructed and retired. During the afternoon of that day counsel agreed that if the jury did not return a verdict before the hour for adjournment the jurors might sign and seal their verdict and leave the same with the bailiff, to be

opened and read the following morning. After both counsel had left the court room the court directed the clerk to enter the following order:

"*Dec. 30, 1914.*—This day again come the parties to this suit, by their attorneys, respectively, and the jury heretofore empaneled herein for the trial of said cause also come, and after hearing all the evidence adduced retire to their room to consider of their verdict, and the hour for adjournment having arrived, it is ordered that when said jury shall have agreed upon their verdict they shall reduce it to writing and sign and seal the same, and that they be and are hereby discharged from further service as jurors, and the polling of said jury is by agreement waived."

The verdict was arrived at during the night, and the jurors were not present in court when the verdict was opened and read the following morning, having been discharged from further service and gone to their homes. It appears from the bill of exceptions that there was no express waiver by either counsel of the right to poll the jury after verdict had been returned, but it further appears that upon the convening of the court on December 31, 1914, counsel on both sides being present, the court stated that, as he understood it, an agreement had been made the day before by the parties to the cause that the polling of the jury would be waived, and that he had directed such an order to be entered of record. Neither counsel made any objection to this statement of the court and did not contradict it, and thereupon the clerk, also without objection, was directed to open and read the verdict. The objection that there had been no waiver of the polling of the jury was not made until January 9, 1915. It is not the rule in this State that an agreement for a sealed verdict carries with it, by implication, a waiver of the polling of the jury, (*Rigg* v. *Cook,* 4 Gilm. 336; *Bond* v. *Wood,* 69 Ill. 282;) but under the facts in this case as they are set forth in the bill of exceptions, plaintiff in error waived its right to object to the opening, reading and recording of the verdict in the absence of the jury. It is not sufficient to say that it would have been useless to have raised this question as after the

verdict was received and the jury discharged it would have availed plaintiff in error nothing to demand the right to poll the jury. Had plaintiff in error objected to the opening of the verdict in the absence of the jury, the court had the power, and it would have been his duty, to recall the jury and require their attendance in court at the time the verdict was opened.

It is finally contended that the original cause of action abated upon the death of the defendant in error's intestate, after verdict and before entry of final judgment. The situation created by the death of defendant in error's intestate before the entry of final judgment was in no way affected by the entry of judgment *nunc pro tunc* as of December 31, 1914. This was not such a situation as called for or warranted the entry of a *nunc pro tunc* judgment, and it is immaterial, so far as this issue is concerned, as to the date upon which the judgment purports to have been entered. At common law the death of a party, though wrongfully caused, gave no right of action to his heirs or personal representative for the injury thereby sustained and the cause of action for personal injury did not survive the death of the person injured. Section 1 of our Injuries act provides that whenever the death of a person is caused by wrongful act and the act is such as would have entitled the party injured to maintain an action and recover damages in respect thereof if death had not ensued, then the person who or the company or corporation which would have been liable if death had not ensued shall be liable in an action for damages. Section 2 provides that such action shall be brought by the personal representative of the deceased for the exclusive benefit of the widow and next of kin. Section 123 of the Administration act provides: "In addition to the actions which survive by the common law, the following shall also survive: * * * Actions to recover damages for an injury to the person, except slander and libel." Pursuant to these statutes the rule as established in

this State is, that if the plaintiff in a suit brought to recover damages for personal injuries dies before final judgment from some cause other than the injuries for which damages are sought the cause of action survives to the personal representative of the deceased plaintiff, but if the plaintiff's death results from the injuries for which damages are sought the suit abates and cannot be further prosecuted. (*Holton* v. *Daly*, 106 Ill. 131; *Chicago and Eastern Illinois Railroad Co.* v. *O'Connor*, 119 id. 586; *Prouty* v. *City of Chicago*, 250 id. 222; *Ohnesorge* v. *Chicago City Railway Co.* 259 id. 424.) In cases governed by said sections of the Injuries act where the death does not immediately follow the injury, the cause of action which accrued at the time of the injury is enlarged or extended upon the death of the party injured, and the measure of recovery is different from that in actions for personal injuries. In such cases there can be no recovery for bodily pain and suffering. The only recovery which can be had is for the pecuniary injury to the widow and next of kin occasioned by the death. The administrator does not sue as the personal representative of the deceased or for the benefit of the estate, but sues as the trustee named by the statute for those who have a more or less direct interest in the continuance of the life of the deceased. (*City of Chicago* v. *Major*, 18 Ill. 349; *Holton* v. *Daly, supra.*) Defendant in error's intestate was unmarried and died leaving only collateral kindred as her heirs-at-law.

After counsel for defendant in error had suggested the death of the plaintiff and requested that Jesse Wilcox, as administrator of the estate, be substituted as party plaintiff, plaintiff in error did not attempt to raise the question whether the suit had abated by filing a plea in abatement, as might have been done, (*Holton* v. *Daly, supra,*) or in any other way, but instead filed its motion for a new trial. The arguments on this motion are set out in full in the bill of exceptions, and it appears that the rule as above stated

was presented and contended for by counsel for plaintiff in error, not for the purpose of showing the necessity of taking further proof to determine the cause of the death and thus disclose whether the suit had abated, but to strengthen the contention made throughout the trial that defendant in error's intestate was not suffering from lead poisoning but was afflicted with and had died from pernicious anæmia. She was critically ill during the progress of the trial, and the date of the trial had been advanced on account of her health and impending death. The evidence was very close as to whether she was suffering from lead poisoning or pernicious anæmia, and this was one of the main questions of fact in issue. Rather than take the inconsistent position that she had died from lead poisoning in order to secure an abatement of the suit, counsel for plaintiff in error, in urging their motion for a new trial, evidently preferred to persist in their contention that she had been afflicted with pernicious anæmia and that she died from that disease. That such was their position is further shown by the fact that one of plaintiff in error's assignments of error in the Appellate Court was that the defendant in error's intestate died, after verdict and before judgment, of a disease other than that for which she claimed damages in her declaration. It devolved upon plaintiff in error when the death of defendant in error's intestate was suggested, if it was contended that she died of lead poisoning, to file an appropriate plea whereby that issue might be raised and determined, and if it was found that she did die of lead poisoning to have the suit abated. Plaintiff in error had the right, as it did do, to contend that she died of some cause other than the injuries complained of and to ask for a new trial. The making of motions for a new trial and in arrest of judgment were inconsistent with the claim that defendant in error's intestate died as a result of the alleged injuries, and having taken the position in the trial court that she died of some disease other than that for which she claimed dam-

ages, plaintiff in error cannot contend here that the trial court erred in entering judgment on the verdict after the substitution of defendant in error as party plaintiff.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*