MARY SULLIVAN *vs.* OLD COLONY STREET RAILWAY
COMPANY.

Norfolk.    December 5, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Damages*, Mental suffering.

The mental suffering for which damages can be recovered in an action for personal injuries is limited to that which results to the person injured as the necessary or natural consequence of the physical injury.

In an action by a married woman for personal injuries, resulting in an extremely nervous condition on her part which might cause the premature birth of a child, she cannot recover damages for her mental suffering on account of the death of a child who was conceived by her seven months after her injuries and was born prematurely seven months later.

TORT by a married woman for personal injuries sustained on the evening of April 17, 1905, when the plaintiff was a passenger on a car of the defendant, from the car leaving the track and coming in collision with a post upon the edge of a sidewalk of High Street in Dedham.    Writ dated May 3, 1905.

At the trial in the Superior Court before *Crosby*, J., the defendant admitted its liability, and the evidence related solely to the question of damages.

The plaintiff's attending physician testified that the physical examination on the day following the accident showed, so far as he could recall, but a single bruise, which was over her right lower ribs and was about the size of a silver dollar ; and that she was at the time of the trial and had been since the accident suffering from no organic trouble, but from a functional disturbance of the nervous system, commonly known as hysteria, and that it came on principally as a result of the excitement and fright of the accident, which would be an adequate cause of her condition, though the blows and " all those things " came in as contributing causes. It further appeared that about November 1, 1905, she became pregnant, and that on July 5, 1906, she gave birth to a child.

As to this pregnancy and birth the attending physician testified as follows :

" In or about November of that year she became pregnant, and after that there was a good deal of exaggerated nausea

which lasted some weeks.  That, however, disappeared and her period of pregnancy was fairly comfortable so far as that was concerned, except that her old symptoms of backache and headache and sleeplessness existed. . . . On July 5, she gave birth to a child which lived just short of forty-eight hours, and then had three or four convulsions and died.  After that, she was in bed for a period of about two weeks — perhaps a little less — and then she got up and about and from that time she made a steady improvement. . . . We commonly suppose that the condition of the mother while carrying the child affects the health and likelihood of life of the child to a certain extent, and yet we can never be sure of our results.  I could only surmise whether the condition of the mother's health had any effect on the child or not.  There is no rule to go by.  It is perfectly possible that an apparently healthy mother will give birth to a dead, diseased, or deformed child, and a slight sickly mother will give birth to a well child.  It depends upon a great variety of things which you cannot tell much about.  It is possible that the mother's pregnancy occurred during the month before October 30. . . . I do not know the cause of the child's death except that I thought it was premature, and I know it died of convulsions."  A physician, called by the defendant, testified on his cross-examination that " premature birth might result from a nervously disturbed condition of the mother if such condition affected the mother profoundly."

At the close of the evidence, the defendant asked the judge to instruct the jury, among other things, as follows :

1. The jury should take great care not to allow the plaintiff any damages by reason of the death of the child.  Such injury, even if there were any evidence that it was indirectly attributable to the accident, is too remote to be a ground for damages in these cases.

2. There is no sufficient evidence that the fact that the child did not live was in any way attributable to the accident.

The presiding judge refused to give the second instruction requested.  He did, however, give the first instruction requested, but also charged the jury upon this branch of the case as follows :

" There is a difference in the claim made by the plaintiff and that of the defendant as to whether the birth of this child and

its subsequent death was in any way or manner attributable to this injury which Mrs. Sullivan sustained, and I instruct you that on account of the death of this child the plaintiff is not entitled to recover, that that is not a proper element of damage to be considered by you in the trial of this case and in estimating this plaintiff's damages, and you will bear that carefully in mind . . . for the death of this child whether its death was due to this accident, as the result of this accident or not, that is a matter that you are not to consider but should leave entirely out of consideration in your estimate of damages. On the other hand, gentlemen, it is a question in dispute between the parties as to whether this child's birth and death was in any way affected by the injuries which Mrs. Sullivan received on April 7, 1905. If you should find as a matter of fact that the accident had nothing to do with the birth of the child at the time it was born and its subsequent death, why then any question on what I am about to say about it is entirely immaterial. If, on the other hand, you should find that this child . . . the child's birth, the date of its birth, the day of its birth and its subsequent death was affected by reason of the injuries which Mrs. Sullivan received while she was a passenger in the car of the defendant as she claims, then that evidence would be important for your consideration in one particular only — not that she would be entitled to recover for the death of the child, but if you found that the child's death was brought about on account of the injuries which the mother received, and you should further find that on account of the death of the child that the mother suffered mentally as the result of the death of the child, then you would be entitled — it would be your duty to take into account that mental suffering, if there was any, in connection with the damages which she has sustained. If she does not satisfy you that this child's death was attributable to the accident, or if you should find that she did not suffer mentally as the result of this child's death, then you would leave out of consideration that question in passing upon the question of damages."

The jury returned a verdict for the plaintiff in the sum of $2,100; and the defendant alleged exceptions.

*Asa P. French,* (*J. S. Allen, Jr.,* with him,) for the defendant.

*E. Greenhood,* for the plaintiff.

RUGG, J.  The connection between the tortious act of a person sought to be charged for the consequences of an injury, as the cause, and the injury sustained, as the effect, must be established by a fair preponderance of the evidence before a plaintiff can be permitted to recover.  Such causal connection cannot be left to conjecture, surmise or speculation, but must rest upon a firm foundation of proof.  *Williams* v. *Citizens Electric Street Railway,* 184 Mass. 437.  *McGarrahan* v. *New York, New Haven, & Hartford Railroad,* 171 Mass. 211, 219.  The evidence tending to connect the premature birth of the child, on July 5, 1906, and its subsequent death within forty-eight hours, with the injury received by the plaintiff on April 7, 1905, is extremely slender.  If there were nothing beyond the testimony of the plaintiff and her attending physician, it would be insufficient, for the latter plainly said that he could only " surmise " as to the cause of the condition of the child.  There was, however, testimony showing an extreme nervous condition on the part of the plaintiff as the result of the injury, and a physician called by the defendant testified that premature birth might result from a nervous condition of the mother, if she were profoundly affected by it.  Upon the authority of *Sullivan* v. *Boston Elevated Railway,* 185 Mass. 602, this was enough.  It has been argued, nevertheless, that the case rests on the ground stated in *Daniels* v. *New York, New Haven, & Hartford Railroad,* 183 Mass. 393, namely, that the wrongful act of the defendant was not " the active efficient cause of the subsequent event," but " only the producer of the conditions which opened the door to another cause, which directly and actively produced the result," and that the death of the after conceived child was a remote consequence of the injury to the mother, but not an effect actively produced by it, and that the plaintiff's voluntary act intervened as the real cause.  See *Snow* v. *New York, New Haven, & Hartford Railroad,* 185 Mass. 321.  This principle has no application to a case like the present.  The perpetuation of the human race cannot be termed a voluntary act, but it rests upon instincts and desires, which are fundamentally imperative.

Although careful instructions were given to exclude the death of the child as an element of damage, the jury were permitted to take into account the mental suffering of the mother on this

account. She was thus permitted to recover money compensation for the sorrow and anguish endured as a result of the contemplation of the death of her child conceived nearly seven months and born fourteen months after the injury. This is extending the rule of damages beyond any limits heretofore recognized. It is an expansion which finds no support in any principle of law. Mental suffering connected with and growing out of physical injury is a legitimate element to be considered in determining damages against a person wrongfully causing an injury. Such suffering is to a greater or less extent inseparably connected with physical harm, and flows from it as a natural result. *Canning* v. *Williamstown*, 1 Cush. 451. The rule of damages is a practical instrumentality for the administration of justice. The principle on which it is founded is compensation. Its object is to afford the equivalent in money for the actual loss caused by the wrong of another. Recurrence to this fundamental conception tests the soundness of claims for the inclusion of new elements of damage. The landowner, whose home, rendered dear by ties of ancestry and personal attachment, is seized under the power of eminent domain, has a right to receive no larger sum, on account of the mental distress he endures in leaving it, than a mere stranger, holding it purely for speculative purposes. The parent, who sues for the loss of services of his minor child, cannot recover for his own sympathetic sorrow in witnessing the sufferings, which cause his loss of service. In an action for deprivation of consortium, the anguish of mind of the husband, in observing the bodily pain of a sensitive wife, forms no element in the damages he may recover. These considerations apply peculiarly to a case like the present. Wealth brings no consolation to those who mourn. The grief occasioned by the death of loved ones touches chords in the human soul which lie outside the compass of pecuniary relief. The solace, which stills the voice of lamentation, comes from sources which cannot be found through the medium of money. The mental suffering, for which damages can be recovered, therefore, is limited to that which results to the person injured as the necessary or natural consequence of the physical injury. But sentiments of grief, sorrow and mourning, which are aroused by extraneous causes, thoughts or reflections, are excluded. The

contemplation of the suffering and death of a child, begotten long after the event complained of, is too remote from the original physical injury to the parent and too intangible and ethereal to be connected with the original wrong of the defendant as a result to be reasonably apprehended from such a cause. The law cannot enter the realm of pure sentiment in this class of case, and award pecuniary compensation for those injured feelings which spring from sympathy and the severance of ties of love and affection. It follows that there can be no recovery for the mental suffering which ensues from the contemplation of the pain, deformity, imperfections or characteristics of any other person or thing. See *McDermott* v. *Severe,* 202 U. S. 600.

The extent to which recovery may be had for mental suffering has been the subject of somewhat conflicting decisions in various jurisdictions. But so far as we have been able to discover, there is unanimity of decision that, for mental suffering of a class like that under discussion, (except by express provision of statute, see *Kelley* v. *Ohio River Railroad,* 58 W. Va. 216,) there can be no recovery. *Maynard* v. *Oregon Railroad,* 46 Ore. 15. *Bovee* v. *Danville,* 53 Vt. 183. *Western Union Telegraph Co.* v. *Cooper,* 71 Texas, 507. *Texas Mexican Railway* v. *Douglass,* 69 Texas, 694. *Atchison, Topeka & Santa Fe Railroad* v. *Chance,* 57 Kans. 40. *Butler* v. *Manhattan Railway,* 143 N. Y. 417. *Lennox* v. *Interurban Street Railway,* 104 App. Div. (N. Y.) 110.

*Exceptions sustained.*