STATE *v.* GIOVANNI MARINO.

May Term, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed February 15, 1917.

*Exceptions—Must be Definite and Specific—Doubt and Uncertainty Resolved Against Exceptor—Cross-Examination—Assumption of Propriety—Witnesses—Same Witness State's and Respondent's Witness—Evidence Favorable to Exceptor—General Objection—Evidence—Admissibility—Character of Deceased, in Murder Prosecution, as a Violent Man—Experts—Opinion as to Weapon Inflicting Wounds—Murder—First and Second Degree—Intent to Kill—From What Facts Inferred—Malice.*

It is an unbending rule, established by the decisions everywhere, and applicable as well to criminal as to civil cases, that error must be made to appear, and that an exception must be sufficiently specific and definite to point out with reasonable accuracy the exact point to which it is directed, and if an exception is so general as to leave in doubt whether the court below had a fair opportunity to pass upon the question presented, it will not be considered.

Doubt and uncertainty in a bill of exceptions are to be solved against the excepting party.

On an exception taken to the admission of a question answered in cross-examination of a witness, it not appearing to the contrary upon the record, the Supreme Court will, in support of the ruling, assume that the direct examination was of such a character as to make the question and answer proper cross-examination.

A witness in a criminal prosecution, first called by the State, is not necessarily the State's witness throughout the trial, but may be the State's witness as to some points and the respondent's witness as to others.

When the testimony of a witness called in a criminal prosecution is favorable to the respondent rather than otherwise an exception taken thereto by the respondent will not be sustained.

An objection "as to form and substance" is too general to require attention in Supreme Court.

In a prosecution for murder, an offer by respondent to show that the deceased said that he was "mad at another man" was properly excluded, there being nothing in the offer tending to show that the respondent was meant, and no connection in the exceptions between the facts covered by the offer and the respondent or his defence.

An offer to show by the respondent in a prosecution for murder in his justification on the ground of self-defence that the deceased told him that he had killed a man on one occasion was properly excluded, when there was nothing to show that the alleged statement referred to an intentional or an accidental killing, that it was anything more than an idle boast, that it was under circumstances reasonably calculated to make an impression upon respondent's mind, or that it did in fact make any impression upon him.

Evidence of the character of the deceased as a violent and dangerous man is admissible upon the issue of self-defence in a prosecution for murder, providing it was an actuating factor in respondent's conduct at the time of the killing, for purpose of justifying respondent's mental attitude and showing that it reasonably appeared to him necessary to do what he did in order to protect his life or to avert great bodily harm.

In a prosecution for murder it is proper for the State to show that respondent had a knife like one found in the house where the killing took place and that the wounds upon the body of deceased were such as might have been inflicted with such a knife.

Such evidence could not harm the respondent where the only question made by him regarding the knife was the ownership of it.

Where the character and extent of the wounds upon the body of the deceased are such that the jury cannot get an adequate idea of them or the instrument used in inflicting them from a mere verbal description, an expert may give his opinion that the wounds could have been made with a weapon shown him.

In a prosecution for murder in the first degree, a verdict of guilty of murder in the second degree amounts to an acquittal of the charge of first degree murder.

Murder in the second degree is the unlawful killing of a human being with malice aforethought, but without deliberation, premeditation or preconcerted design to kill.

An intent to kill may lawfully be inferred from the fact that use was made of a deadly weapon in such a way as to make the death of the victim a natural consequence.

The killing of another person is unjustifiable unless done in self-defence according to the legal sense of that term.

The malice required by law in a prosecution for murder may be inferred from the facts and circumstances constituting the *res gestae.*

INDICTMENT FOR MURDER. Plea, not guilty. Trial by jury at the March Term, 1915, Rutland County, *Waterman,* J., presiding. Verdict of guilty of murder in the second degree. Respondent excepted. The case is stated in the opinion.

*William H. Preston* for respondent.

The remark of the state's attorney in regard to the previous testimony of Rose Vananden was improper. *Fellows et al.* v. *Champion International Co.,* 83 Atl. 1091; *Davis* v. *Randall,* 85 Vt. 70; *Citizens' Savings Bank* v. *Fitchburg Fire Ins. Co.,* 86 Vt. 267; *Lamy* v. *Demers,* 94 Atl. 262; *Carleton* v. *Fairbanks & Co.,* 88 Vt. 537; *Blaisdell & Barron, Admrs.* v. *Davis,* 72 Vt. 295; *Parker Sons* v. *Sherman,* 71 Vt. 439; *State* v. *Williams,* 35 So. 521.

The evidence that deceased had said that he was "mad at another man" was admissible to show his ill feeling toward respondent. It was relevant upon the respondent's claim that deceased was the assailant, and should have been admitted. Stephen on Ev. Art. 7; *State* v. *Hannett,* 54 Vt. 83; Clark's Crim. Law (2nd ed.) 49; *Richardson* v. *Royalton,* 6 Vt. 496; *State* v. *Ryder,* 80 Vt. 422; *Holmes* v. *Goldsmith,* 147 U. S. 150, 164; Bishop's New Crim. Proc. 1078.

The evidence that deceased had told respondent that he had killed a man was improperly excluded. Respondent justified on the ground of self-defence, and might prove the character of deceased as a quarrelsome and dangerous man. This statement by deceased would naturally cause respondent reasonably to apprehend danger from him. *McQuiggan* v. *Ladd et al.,* 79 Vt. 90, 3 L. R. A. (N. S.) 359 and note.

Guilt of murder in the first and second degrees, because the evidence does not justify a verdict of guilty in either charge. Bishop's New Crim. Proc., see 980, notes; *In re Bean's Will,* 85 Vt. 452; *State* v. *Clary et al.,* 84 Vt. 110.

The testimony of the expert that the wounds might have been made with a knife such as shown the witness was not ad-

missible. It was not a subject requiring the opinion of one specially well versed in the subject. The jury was competent to judge of the matter. *Griffin* v. *B. & M. R. R.*, 87 Vt. 278; *Drown* v. *N. E. Tel. & Tel. Co. et al.*, 81 Vt. 358.

*Herbert G. Barber,* Attorney General, and *C. V. Poulin,* State's Attorney, for the State.

The remark of the State's Attorney was not prejudicial. The State may impeach its own witness in criminal cases. *State* v. *Slack & Clough,* 69 Vt. 486; *State* v. *Harrison,* 66 Vt. 523; *State* v. *Magoon,* 50 Vt. 333.

The evidence that deceased had said that ''he was mad at another man'' was too remote to be relevant. No offer was made to connect respondent with deceased's statement, and there was no evidence having that effect. Jones on Evidence, Sec. 137; Reynolds on Trial Evidence, §§ 4, 5; Stephen's Dig. Art 2; Taylor, Evidence, 316; *Alexander* v. *U. S.*, 138 U. S. 353, 356.

The evidence that deceased had told respondent that he had once killed a man in Italy was too remote to be relevant, and its admission lay within the discretion of the trial court and the ruling is not reviewable. *Smith* v. *C. V. R. Co.*, 80 Vt. 208; *Belka* v. *Allen,* 82 Vt. 456; *Perkins & Co.* v. *Perley,* 82 Vt. 524; *May* v. *People,* 6 Pac. 816; *Cole* v. *State,* 88 S. W. 341; *State* v. *Sale,* 119 Iowa 1, 92 N. W. 680, 95 N. W. 193.

The objective character of deceased, and respondent's knowledge of it cannot be proved by the unsupported statement of deceased that he had killed a man, without an offer to show the circumstances surrounding the killing. *McQuiggan* v. *Ladd,* 79 Vt. 90; *People* v. *Harris,* 95 Mich. 87, 54 N. W. 648; *Hampton* v. *State,* 65 S. W. 526.

It was for the jury to find, on the evidence, whether the killing was murder, and if so, whether in the first or second degree. *State* v. *Carr,* 53 Vt. 37; P. S. §§ 2337, 2338; *State* v. *Meyer,* 58 Vt. 457.

The testimony of the expert that the wounds on deceased's body might have been made with the knife exhibited to him was properly received. *Drown* v. *N. E. Tel. & Tel. Co. et al.*, 81 Vt. 358; Jones on Evidence, Sec. 360; *Clemons* v. *State,* 48 Fla. 9, 37 So. 647; *State* v. *Breaux,* 104 La. 540, 29 So. 222; *State* v. *Wilcox,* 132 N. C. 1120, 44 S. E. 625; *Sebastian* v. *State,* 41 Tex.

Crim. Rep. 248, 53 S. W. 875; *Kirk* v. *State,* 37 S. W. 440; *Tune* v. *State,* 49 Tex. Crim. Rep. 248, 94 S. W. 231; *State* v. *Fournier,* 68 Vt. 262.

POWERS, J.  Having been indicted for the murder of Angelo DiGioio, the respondent was convicted of murder in the second degree, and is now serving a life sentence at Windsor. The parties were fellow boarders at the house of Mrs. Pette, with whom Mrs. Caroli, a married daughter, then lived. On the morning of the homicide, DiGioio went to his work at a little after six o'clock. Half an hour later, he returned to Mrs. Pette's, and stealthily entered the house by climbing onto a shed roof and passing thence through a window into his room. The respondent came down from his room that morning about seven o'clock; and after he had washed, as usual, he went back upstairs. Soon after, the women named heard a noise upstairs and immediately the respondent and DiGioio appeared on the stairs fighting and struggling and the former killed the latter, stabbing him to death as hereinafter detailed.

Rose Vananden was a witness for the State. She lived next door, and on the morning in question, hearing loud talk, she went to the window and saw DiGioio in the yard in the rear of the Pette house, angry and excited, and shaking his fists toward the house. She testified that he went upon the piazza to the dining-room window of the Pette house, and kept shaking his fists all the time. If it was true that DiGioio came back to the house as stated and was shaking his fists at some one inside the dining-room, it was a circumstance of some importance in the justification of self-defence relied upon by the respondent. The evidence shows that the respondent was the only person inside the house toward whom his anger and threats were or could be directed. The state's attorney realized the force of this testimony, and, resorting to the right of impeachment which the law gave him (*State* v. *Slack,* 69 Vt. 486, 38 Atl. 311), called her attention to the fact that twice before she had testified about this matter, and asked her if on either of those occasions she testified that DiGioio was shaking his fists while he was on the piazza. To this the respondent objected. Before the question was ruled upon, the state's attorney said, "she has testified before the city court and the grand jury, and she didn't testify to any such thing." Immediately following a statement of this remark the

bill of exceptions contains the simple statement, "exception by the respondent." But there is nothing to show whether the exception was intended to relate to the remark of the attorney or to the admission of the question. We are referred to the transcript on this exception, but nothing there appears to aid the bill. It is an unyielding rule, established by the decisions everywhere, and applicable as well to criminal as to civil cases, that error must be made to appear, and that an exception must be sufficiently specific and definite to point out with reasonable accuracy the exact point to which it is directed. Such is necessarily the rule, for trial courts are entitled to know the precise question they are passing upon. Doubt and uncertainty in the bill are to be solved against the excepting party (*Stoddard* v. *Cambridge Mut. Fire Ins. Co.*, 75 Vt. 253, 54 Atl. 284; *Belka* v. *Allen*, 82 Vt. 456, 74 Atl. 91), and this Court will not consider any questions except those upon which the court below has had a fair opportunity to pass judgment (*In re Bean's Will*, 85 Vt. 452, 82 Atl. 734); and if an exception is so general as to leave this question in doubt it will not be considered (*Erie R. Co.* v. *Waite*, 62 Misc. Rep. 372, 114 N. Y. Supp. 1115). Counsel disagree as to how the matter was understood and treated below, and we cannot say from the record how this was. In these circumstances, as was said in *Belka* v. *Allen, supra,* "this Court will not speculate or surmise," but will hold the exception too uncertain to be available.

The State's evidence tended to show that on the Thursday before the homicide, DiGioio claimed that he had lost a sum of money, and that he suspected that the respondent had stolen it from his room; and that on the next day, Mrs. Pette, in the presence of Mrs. Caroli, talked with the respondent about this matter. After Mrs. Caroli had been on the stand as a witness for the State, the respondent called her, and after examining her as a witness turned her over to the state's attorney. Thereupon the attorney asked her if she was present during the conversation between Mrs. Pette and the respondent above referred to, and she replied that she was. He then asked her when and where it was, and subject to the respondent's objection and exception that it was immaterial, irrelevant and incompetent, the witness was allowed to testify that it was in the kitchen on Friday, the day before the homicide, and that Mrs. Pette then said to the respondent, "John, have you been in my brother-in-law's (Di-

Gioio's) room? Angelo was looking for ten dollars; he called my daughter in his room;'' and that the respondent replied, ''No, I haven't been in his room. When my friends come here, I don't have them go upstairs just for that reason; if there is anything lost they can't blame it to me.'' Assuming that the exception saved is sufficiently specific to require attention, we find no error here. On this exception the transcript is not before us. For ought that appears, the respondent's examination of the witness was of a character to make the foregoing proper cross-examination. This Court, then, will in support of the ruling assume that fact. *Jenness* v. *Simpson,* 84 Vt. 127, 78 Atl. 886. But the respondent claims that this witness, having been first used by the State, was the State's witness throughout the trial. Without regard to the importance of this if true, the claim is unsound. One may be the State's witness as to some points, and the respondent's witness as to others. This appears from *State* v. *Merrill,* 85 Vt. 35, 80 Atl. 819. Moreover, the testimony given by Mrs. Caroli, so far as we have recited it, was favorable to the respondent rather than otherwise, so this exception could not, in any view, be sustained.

The state's attorney examined Mrs. Caroli further; but the only objections made to the questions that followed were in this form: ''Objected to as to form and substance.'' Inasmuch as defects of form, as well as defects of substance, are of different kinds, the exceptions taken were too general to require attention. *Foster's Ex'rs* v. *Dickinson,* 64 Vt. at page 245, 24 Atl. 253.

Raphael Crocietti, a fellow workman with DiGioio, was a witness for the respondent. An offer was made to show by him that a day or two before the homicide DiGioio was careless about his work, and the witness asked him what the matter was, and DiGioio replied that he was mad; that the witness then asked him if he was mad at his brother-in-law Rocco, and he replied, ''no, I am mad at another man.'' This offer was excluded and the respondent excepted. There was nothing in the offer tending to show that the respondent was the object of DiGioio's anger, nor is there anything in the exceptions furnishing an ''open and visible connection'' between the facts covered by the offer and the respondent or his defence. In the brief, counsel argue that this was when DiGioio suspected that the respondent had stolen his money. But this fact did not sufficiently appear. The ex-

act time was indefinite and no attempt was made to make it definite.

The respondent was a witness in his own behalf and his counsel offered to show by him that at some time before the homicide DiGioio told him that "over in Italy on one occasion, he killed a man." This was excluded and the respondent excepted. There is nothing before us to show whether this alleged statement referred to an intentional or accidental homicide; nothing to show that it was anything more than an idle boast; nothing to show that it was made under circumstances reasonably calculated to make any impression on the respondent's mind; nothing to show, even, that it did in fact make any impression on him. The character of DiGioio as a violent and dangerous man, if known to the respondent, was a pertinent fact under his attempted justification of self-defence,—provided it was an actuating factor in his conduct at the time of the killing. But such evidence is admitted to justify a respondent's mental attitude; to show that it reasonably appeared to him necessary to do what he did in order to protect his life or to avert great bodily harm. If his knowledge of the victim's character did not influence his acts, that character was a fact of no importance. So the offer did not go far enough to make the testimony admissible.

The State's evidence tended to show that the charred fragments of the knife used by the respondent were found, several days after the homicide, in the ash pan of the stove in the Pette house. These fragments were admitted in evidence. The State also produced a new knife exactly like the one so used as it was before it was broken and burned, and subject to the respondent's exception, was allowed to show by Dr. Stone, a medical expert who performed the autopsy, that the wounds found on DiGioio's body, which he described and testified about, "might have been made with such a knife." There was no error in this ruling. It was proper to show that the respondent had such a knife, and what it was like when used; for this showed that he had the means of perpetrating the crime charged against him. *State* v. *Noakes*, 70 Vt. 247, 40 Atl. 249. Nor could this one fact have harmed the respondent, as the only question he made regarding the knife used was as to whom it belonged. The character and extent of the wounds upon the body were such that a juryman could not get an adequate idea of them or the instrument used from a mere verbal description. In such cases an expert may

give his opinion that the wounds could have been made with a weapon showed him. *Betts* v. *State,* 60 Tex. Cr. R. 631, 133 S. W. 251; *Metropolitan Life Ins. Co.* v. *Wagner,* 50 Tex. Civ. App. 233, 109 S. W. 1120; *People* v. *Sampo,* 17 Cal. App. 135, 118 Pac. 957; *State* v. *Seymour,* 94 Iowa 699, 63 N. W. 661; *State* v. *Breaux,* 104 La. 540, 29 South. 222; *Gardiner* v. *People,* 6 Park. Cr. R. (N. Y.) 155; *Kirk* v. *State,* (Tex. Cr. R.) 37 S. W. 440.

The respondent excepted to the action of the court in submitting to the jury the question of his guilt of murder in either the first or second degree, insisting that the evidence was insufficient to sustain a conviction of either of those crimes. We need not concern ourselves with its sufficiency to sustain a conviction of first degree murder, for on that charge the verdict rendered amounts to an acquittal. Whart. Hom., § 898; *State* v. *Alpert,* 88 Vt. 191, 92 Atl. 32; *State* v. *Nelson,* 91 Vt. 168, 99 Atl. 881. Murder in the second degree is the unlawful killing of a human being with malice aforethought but without deliberation, premeditation or preconcerted design to kill. *State* v. *Meyers,* 58 Vt. 457, 3 Atl. 195; *State* v. *Bradley,* 64 Vt. 466, 24 Atl. 1053. This killing was unlawful if it was intentional and unjustifiable. The intent to kill could lawfully be inferred from the fact that use was made of a deadly weapon in such a way as to make the death of the victim a natural consequence. *State* v. *McDonnell,* 32 Vt. 491. It was unjustifiable, unless done in self-defence, according to the legal sense of that term. And, while the evidence in behalf of the respondent, especially that given by himself, tends to make the case one of justifiable homicide in defence of his own life, that in behalf of the State gives the killing quite a different character, and tends strongly to show that the claim of self-defence was a sham and pretense. The malice required by the law could be inferred from the facts and circumstances. There was evidence before the jury fairly and reasonably tending to show that on the evening before the homicide, and after he had learned that DiGioio suspected him of stealing his money, the respondent bought the knife used by him on DiGioio, at a local store, that it was not an ordinary pocket knife, but a murderous instrument when used as a weapon of offence; that the respondent had this knife in his hand when the men first appeared on the stairs; that he stabbed DiGioio with it once, and perhaps twice, before they reached the foot of the stairs; that

DiGioio was ahead of the respondent when they came downstairs, and was trying to pull away from him; that DiGioio ran through the house and out into the snow in his bare feet; that he was trying to get away from his assailant; that when he was outside, he called for help, and said to the respondent,"You had no right to come into my bed room," to which statement the respondent made no reply; that the respondent, knife in hand, calmly waited in the dining-room for DiGioio to return; that the latter did return to the kitchen door, still being unarmed, and instead of entering the house, called to Mrs. Caroli to bring his coat and hat; that when she passed his hat through the door to him, he sent her back to his room for his coat and shoes,—indicating that he was the one who was trying to avoid a further encounter; that all this time the respondent cooly waited in the dining-room; that when Mrs. Caroli returned with the coat and shoes, the respondent was in the kitchen knifing DiGioio, who was trying to escape from him; that as soon as DiGioio got outside the house, the respondent stuck the knife into the door-casing, ran from the house, and after hiding in a barn for a few hours fled the State. This evidence, together with the character and location of the wounds inflicted upon DiGioio,—two of which penetrated the heart,— and with the further fact that the respondent came out of the encounter without so much as a scratch upon him, affords sufficient evidence that the killing was malicious,—if, indeed, it was not cold-blooded and premeditated. These facts constitute the *res gestae* and are properly referred to on the questions of malice and intent. 21 Cyc. 897.

*Judgment that there is no error and that the respondent takes nothing by his exceptions.*