R. N. BALDWIN *v.* J. H. GAINES.

May Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 2, 1917.

*Witnesses—Examination—Reading Authorities—Harmless Error —Evidence—Experts—Cross Examination—Negligence— Question for Jury—Charge—Damages—When not Supported by Evidence.*

In an action against a physician for malpractice, it was improper to ask defendant, in direct examination, whether a certain book on medical science exactly described the treatment in question; because the contents of the book not being evidence of the facts therein stated, the passage could not be thus indirectly introduced in evidence.

Where an expert witness testifies to his own experience and observation only, authorities cannot be read into the case, either directly or indirectly, in his cross examination; but where he testifies as to what the authorities show, or bases an opinion in whole or in part upon what they advocate, the books may be used to contradict the witness and to discredit his testimony, though he mentions no particular author.

In an action against a physician for malpractice, the admission in evidence of a statement contained in a book upon medical science was, under the circumstances, harmless error.

In an action against a physician for malpractice, the answer of plaintiff's medical expert that a careful examination should be made, when asked what should be done where severe pain continued at

the point of fracture, after plaintiff's broken leg had been set by defendant, was not prejudicial.

Error, if any, in the exclusion of a question asked an expert witness on cross examination as to a statement in a book upon medical science, was rendered harmless by reading the passage later in the trial to another witness, without objection, all the benefit thereof having been thus obtained.

Under the circumstances, *held*, it could not be said from the record that the exclusion of proposed questions as to the time when the witness first noticed a deformity of the plaintiff amounted to an unwarranted limitation of the right of cross examination.

In an action against a physician for malpractice, it is proper to allow an expert witness to testify that the deformity of plaintiff's leg was such as would be produced by bandaging the leg to a side splint as done by defendant; and the witness is not disqualified by the fact that he had never had experience with this method of treatment.

In an action against a physician for malpractice, defendant was not harmed by the admission of a question and answer on cross-examination of an expert, under objection on the ground that the question assumed a fact not appearing in evidence, when it appeared that there was evidence, though vague, of such fact, and where the answer was not based upon it.

There is no error in permitting on the cross examination of an expert, a question based upon the same hypothesis as that made by opposing counsel in asking a question of the same witness on direct examination.

In an action against a physician for malpractice, evidence offered by defendant that two physicians who assisted the witness in cases where he gave the same treatment as that given by defendant to plaintiff approved thereof, is not admissible.

That expert witnesses, entertained at some previous time similar views to those expressed by them in testifying is immaterial.

Evidence examined and *held* that the negligence of defendant, and the damages resulting therefrom, were jury questions.

That defendant's evidence tended very strongly to disprove his negligence did not warrant the granting his motion for a verdict, there being evidence fairly and reasonably tending to support the plaintiff's claim.

Charge examined and *held*, to be warranted by the evidence and declaration.

In an action against a physician for malpractice, plaintiff's loss of earning capacity is a proper element of damage, and ordinarily, with an adult, this is to be shown by proof of what he earned before the injury and what he has been earning since, but enough facts must be shown to enable the jury to make an intelligent determination of the extent of his loss.

In an action against a physician for malpractice, evidence that after the injury the plaintiff, who was a traveling salesman, was lame, suffered pain, and was unable to carry his samples and get around as before, and that for this reason his employer cut down his territory, and that his salary was just what it was before, is, standing alone, an inadequate and insufficient basis for submitting to the jury, as an element of damage, his loss of earning capacity.

CASE against a physician for malpractice in setting and caring for a fractured femur. Plea, the general issue. Trial by jury at the September Term, 1916, Orleans County, *Stanton*, J., presiding. Verdict and judgment for plaintiff. Defendant excepted.

*J. W. Redmond* and *Aaron H. Grout* for defendant.

*Frank D. Thompson, J. Rolf Searles* and *E. S. Jones* for plaintiff.

POWERS, J. This is an action against a physician for malpractice. There was evidence tending to show that the plaintiff was in an automobile accident and suffered a simple, oblique fracture of the middle third of the right femur. He was taken to a hotel in Newport, where he was attended by the defendant and another physician, Dr. Blanchard. These two doctors, with other assistance, set the leg, making use of a long splint, called a Liston splint. Both doctors attended the plaintiff for a time, and the defendant attended him until he was moved to his home in Irasburgh, on December 20, 1913, which was about three weeks after the accident. Two days after this removal, the defendant visited the plaintiff professionally at the latter's home, and once later saw him when he was at Irasburgh to visit another patient. On January 15, 1914, Dr. Templeton, who was then caring for the plaintiff, removed the splint and found the injured leg two and one-fourth inches shorter than the other one. This condition is permanent, and the ends of the broken bone overlap, so that

there is an angular deformity at the point of fracture. This result causes pain and discomfort, and interferes with his ability to handle his business.

The plaintiff called the defendant to the stand and examined him as a witness. When he was questioned by his own counsel, he was asked what medical authorities prescribed the method of reduction and treatment used by him on the plaintiff; and, without objection he replied that Walsham was such an authority. Thereupon his counsel produced a book entitled "Surgery, its Theory and Practice," by the author named, and asked the witness if the book, on pages 445 and 446, exactly described the method so used by him. This question was excluded and the defendant excepted. The exclusion was correct. That the contents of the book were not evidence of the facts therein stated is shown by *Rogers* v. *State,* 77 Vt. 454, 61 Atl. 489, and many other cases outside the State. And it is improper, in the circumstances here existing, to ask a medical expert if he is acquainted with a certain book, and calling his attention to a particular paragraph, to ask a question in the language of the book, and thus indirectly introduce such passage in evidence. *Marshall* v. *Brown,* 50 Mich. 148, 15 N. W. 55; *In re Mason,* 60 Hun 46, 14 N. Y. Supp. 434; *State* v. *Coleman,* 20 S. C. 441; *People* v. *Goldensen,* 76 Cal. 328, 19 Pac. 161; *St. Louis, etc. R. Co.* v. *Jones,* (Tex.) 14 S. W. 309; *Lilley* v. *Parkinson,* 91 Cal. 655, 27 Pac. 1091. See *Rudd* v. *Rounds,* 64 Vt. 432, 25 Atl. 438. The suggestion that the evidence would corroborate the witness is without force. It is not permissible to reinforce a witness in this way. *Gallagher* v. *Market St. R. Co.,* 67 Cal. 13, 6 Pac. 869, 56 Am. Rep. 713; *Fox* v. *Penninsular, etc. Works,* 84 Mich. 676, 48 N. W. 203; *Davis* v. *State,* 38 Md. 15.

There was no error in the cross examination of Dr. Stockwell. He was an expert witness for the defendant, and in his direct testimony, referring to the method used by the defendant, asserted that it was a treatment recognized by the best authorities. In cross examination he was very properly asked to name the authorities thus referred to (*Chicago Union Trac. Co.* v. *Ertrachter,* 228 Ill. 114, 81 N. E. 816) and replied that Walsham was the one he most relied upon, and that Stimson spoke of this method. Thereupon, the witness was asked if Stimson did not say that traction by weight and pulley or elastic traction was almost exclusively employed in such cases; and, subject to excep-

tion, the witness replied in effect, that he did. It is apparent that in his first statement, the witness intended to have the jury understand that Stimson approved the Liston method of treatment. It was, therefore, proper cross examination, to show by the book itself that the author did not approve such treatment. While it was not permissible to read the book into the case for the mere purpose of showing that the author disagreed with the witness (*Bloomington* v. *Shrock*, 110 Ill. 219, 51 Am. Rep. 679; *Hall* v. *Murdock*, 114 Mich. 233, 72 N. W. 150; *State* v. *Brunett*, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916 E, 340), it was permissible to contradict and discredit him by showing that the book did not warrant his statement. *Gallagher* v. *Market St. R. R. Co.*, 67 Cal. 13, 6 Pac. 869, 51 Am. Rep. 680; *Bloomington* v. *Shrock*, 110 Ill. 219, 51 Am. Rep. 679; *People* v. *Millard*, 53 Mich. 63, 18 N. W. 562; *Ripton* v. *Bittel*, 30 Wis. 614; *Clark* v. *Com.*, 111 Ky. 443, 63 S. W. 740.

Dr. Young, another expert for the defendant, testified in direct examination that the Liston method was well recognized by the authorities. He also testified in cross examination that he had observed that there was usually a great deal of pain from the use of Buck's extension. Thereupon, counsel for the plaintiff asked the witness if Scudder on Fractures, a recognized authority, did not say that as a general rule the use of Buck's extension was followed by very little pain; and he was shown the book to refresh his recollection. This was objected to by the defendant, but the objection was overruled and the answer taken subject to exception. This was error. It was not competent to contradict the witness in this way. As to the matter of the pain incident to the use of Buck's extension, this witness spoke of his experience and observation only, and made no reference, directly or indirectly to Scudder or any other medical authority. His standing was entirely different from that of Dr. Stockwell, who spoke wholly of what the authorities approved. And right there lies the vital distinction. When an expert witness testifies to his own experience and observation only, authorities cannot be read into the case, either directly or indirectly in his cross examination. *Enos* v. *St. Paul F. & M. Ins. Co.*, 4 S. D. 639, 57 N. W. 919, 46 Am. St. Rep. 796; *State* v. *Brunette*, 28 N. D. 539, 154 N. W. 271, Ann. Cas. 1916 E, 340. But when he testifies as to what the authorities show, or bases an opinion in whole or in part upon what they advocate, the books

may be used to contradict the witness and to discredit his testimony, though he mentions no particular author. *State* v. *Brunette*, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916 E, 340; *Wittenburgh* v. *Onsgard*, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141.

Just when and how far these books can be used to test the qualifications of the witness, we do not now inquire as the transcript shows that this ground of admissibility, if otherwise available, was excluded by what was said and done below. But this error is not made to appear harmful. When the answer of the witness was complete, it appeared that all the author said was that ''ordinarily there would be little or no pain associated with the repair of the fracture'', without a word about any particular method or apparatus. The defendant had already admitted that Scudder made this statement, and under any rule and in any view the error was harmless.

Dr. Templeton, testifying for the plaintiff as an expert, said that when a leg was put up as this one was, and severe pain continued at the point of fracture, it indicated that the dressings were too tight at some place, or the parts were not in apposition. So far no objection was made. He was then asked what should be done in a case like that, and subject to exception replied that a careful examination of the injured parts should be made. We need take no time with this exception. It is so obvious from the testimony that such an examination should be made in the circumstances stated that the answer could not have prejudiced the defendant.

During the cross examination of Dr. Templeton, he testified that the books approved of various methods of securing the requisite extension, counter extension and fixation in such fractures as here involved; but that he had never observed an approval of the use of a splint of the character of the one employed by the defendant, though he had read of it in obsolete works. He was then shown a copy of Stimson on Fractures, published in 1900, and he testified that he never heard of it before and knew nothing about it as an authority, but should not call it obsolete. He was then asked if he noticed that among the dressings therein prescribed was a side or hip splint, usually with traction. This question being objected to was excluded, and the defendant excepted.

The object of this inquiry, as stated by counsel and as shown by a formal offer, was to show the fact that the author approved this kind of a splint. But later on in the trial, the passage referred to was read to Dr. Longe, and all the benefit therefrom asked for by counsel was obtained. Thus the error, if any, was rendered harmless. *Livingston Mfg. Co.* v. *Rizzi Bros.*, 86 Vt. 419, 85 Atl. 912.

A sister of the plaintiff, who took care of him a part of the time during his disability, testified that she observed that the injured leg was shorter than the other. In cross examination she was asked to state how long it was after she began taking care of him that she made this discovery, and replied that she did not remember. She was asked if it was within a week, and replied that perhaps it was not. She was then asked if it was within two weeks, and replied that she wouldn't say, and if within three weeks, and replied that she did not know how long a time it was. Counsel then proposed to ask her if it was four weeks, five weeks, six weeks, and these several questions were excluded and the defendant excepted. It appeared that the witness made this discovery while the plaintiff was being cared for at Newport, and that Miss Hackett, a nurse, had charge of the patient for a week after the witness arrived. It also appeared that the plaintiff was taken to Irasburgh in three weeks after the accident, or to be accurate, three weeks and one day. The effect of the witness' testimony was that she did not discover the shortage of the limb until after Miss Hackett went away. So there were only two weeks of the stay in Newport left, and it was well within the discretion of the court to confine the questions to that period of time. This period counsel was allowed to cover. And while the witness might well have been required to be more definite as to the time, and the matter was of considerable importance, we cannot say from the record that the exclusion of the proposed questions amounted to unwarranted limitation of the right of cross examination.

Dr. Aldrich, an expert witness for the plaintiff, testified that he had never used or seen used a Liston splint and knew nothing regarding results of that method of treatment. He was shown two X-ray plates, which were exhibits in the case, and asked whether, assuming the plates were taken of the plaintiff's injured leg, the angular deformity shown was such as would be produced by bandaging the leg to this side splint as done by the

defendant; and subject to exception, he was allowed to answer that it was. The defendant now argues that this was error because it was allowing the witness to usurp the province of the jury by expressing an opinion on the very question the jury was to decide; and the familiar rule forbidding this is quoted. But it will not do to accept this rule too literally. 11 R. C. L. 583, 584. It is not at all unusual to allow an expert witness to give an opinion that a particular condition is due to a specified cause; certainly the rule is liberal enough to allow him to say that it might be. 3 Chamb. Ev. § 2420. *State* v. *Noakes,* 70 Vt. 247, 40 Atl. 249; *State* v. *Marino,* 91 Vt. 237, 99 Atl. 882. Some of the authorities make a distinction between the two statements above, admitting the latter, but not the former. *Castanie* v. *United Rys. Co.,* 249 Mo. 192, 155 S. W. 38, L. R. A. 1915 A, 1056. But many cases sustain the admission of both. Note L. R. A. 1915 A, 1058; 11 R. C. L. 584, and cases, note 19; *Supreme Tent, etc.* v. *Stensland,* 206 Ill. 124, 68 N. E. 1098, 99 Am. St. Rep. 137; *Tullis* v. *Rankin,* 6 N. D. 44, 68 N. W. 187, 35 L. R. A. 499, 66 L. R. A. 586.

The fact that Dr. Aldrich had never had experience with this method of treatment did not disqualify him. *Niles* v. *C. V. Ry. Co.,* 87 Vt. 356, 89 Atl. 629.

Dr. Stockwell testified to the tendency of the ends of the broken bone to slip by each other in case the splint was removed before boney union had sufficiently progressed. In cross-examination he was asked if he would expect any sliding by if, at the time the splints were removed, a plaster cast was immediately put on, and bandages were put around it; and, subject to exception, replied that he would not, that the cast, if properly applied would tend to prevent it. The objection to this was put upon the ground that there was no evidence in the case to show that there was a bandage outside of the plaster cast. But a Mrs. Hilliker testified—rather vaguely, it must be admitted—in a way to indicate that there was something in the nature of a bandage outside the cast. At any rate, the answer of the witness shows beyond question that his reply was not based upon the presence of a bandage, but wholly upon the plaster cast. So the defendant was not harmed.

Dr. Schofield was an expert witness for the defendant. In his direct examination he was asked about the effect upon the muscles of the injured leg the fact that the automobile rested

upon it for half an hour before he was released would have, and replied that he should expect it to paralyze the muscles and lessen the amount of contraction.  He was then asked, "Suppose a person, so far as the case shows, wasn't used to using intoxicating liquor, should, in addition to having the automobile rest on his leg, have taken some liquor, would that tend to relax the muscles?"  And he replied that it would, if he had enough.  In cross-examination the witness was asked, "Now, assuming that the fellow wasn't accustomed to taking intoxicating liquor, had about six o'clock in the afternoon one drink, * * * would you expect that that drink * * * would affect the muscles of the broken limb?"  The witness answered, subject to exception, that he should say it would not.  The only objection made to this question was that the witness was asked to assume that the man referred to—the plaintiff—had not been accustomed to use liquor. But this was the hypothesis made by the defendant as the basis of his question quoted above.  To be sure, counsel for the defendant added to his question the clause "so far as the case shows," but this did not make the questions essentially different. The question admitted was warranted by the direct examination and the exception is not sustained.

Dr. Kendrick was another of the defendant's experts.  He testified that he had used a Liston splint in three cases, that Dr. Stockwell assisted in one of the cases, and Dr. Cushman in another.  The court declined to allow the witness to say whether they approved the method adopted by him, and the defendant excepted.  The ruling was without error.  Their approval could only have been indicated by what they said, or possibly by what they did, on the occasions referred to.  The offer, at best, was a mere attempt to show what those doctors then thought about the propriety of that method.  This would be nothing but hearsay.  Both these doctors were in court and were witnesses in the defendant's behalf.  As such, they approved the defendant's method of treatment, and gave him the benefit of their present opinion regarding it.  That they entertained similar views at some previous time was immaterial.  See *McGovern* v. *Hays & Smith,* 75 Vt. 104, 53 Atl. 326.

At the close of the evidence, the defendant moved for a verdict on the following grounds:   (1) That there was no evidence tending to show negligence on the part of the defendant; (2) If such evidence is to be found, there is nothing tending to show that the damages complained of resulted from that negligence.

A disposition of this motion does not require an extended review of the evidence. The defendant himself testified that it was an easy case and that there was no reason why there should have been such a shortening of the injured leg. All agreed that the thing to be done was to reduce the fracture and keep the ends of the broken bone in place. To accomplish this three things were essential; apposition, extension and counter extension, and fixation. Any approved method of treatment that secured these was a good method, and good practice required nothing more. But there was evidence fairly and reasonably tending to show that this defendant failed on the very first requirement—that he failed to set the bone. We need only refer to the testimony of Dr. Blanchard, Dr. Ross, and Miss Baldwin to justify this statement. And then there was testimony justifying the inference that if the bone was properly set, the defendant failed to keep it in place. The pain, deformity and shortening of the leg indicated this. And according to the plaintiff's evidence, especially his medical evidence, his present condition is due to these failures of the defendant, one or both. That the defendant's evidence tended very strongly to the contrary did not warrant granting the motion. The case was for the jury and the motion was properly overruled.

The defendant excepted to the charge of the court wherein it allowed the jury to find defendant negligent for using the Liston method rather than some other, insisting that on the evidence it was not permissible to find that this method did not accord with the degree of knowledge, care and skill had and exercised by physicians engaged in the same general line of practice in that general neighborhood. This exception cannot be sustained. It assumes that the evidence was all one way on this phase of the case. It ignores the medical testimony tending to show that this method is obsolete; that it was not used by certain other physicians in that locality; that it would not insure complete fixation; and that it was inefficient in the matter of extension, unless the perineal band connected with it was constantly watched.

The defendant excepted to the charge wherein it allowed the jury to award damages on account of the deformity at the point of fracture, claiming that the plaintiff had not covered this by his declaration. But the second count sufficiently declares for it, and the exception is not sustained.

The defendant excepted to the charge because it did not make clear to the jury that the defendant would not be liable if, in selecting a method of treatment, he chose one just as good as those generally recognized by the profession in that locality, even if it was not in general use there. The only suggestion made in the brief in support of this exception is that "the defendant was entitled to an instruction making it clear beyond question that he was not bound to choose and use any one particular method of treatment or reduction, but that he might employ any one of the several methods approved by the authorities and used by physicians in his general neighborhood and in his general line of practice and that he could not be held guilty of negligence solely for so choosing." The court charged that the defendant could not be held liable for a mere error of judgment in choosing from several well recognized and authoritative methods of treatment, the one he in fact used; and that he could not be held liable if the method chosen was a proper method and one well recognized in the same general neighborhood by those in the same general line of practice. So far as the criticism here made is concerned the charge was all that the defendant was entitled to.

Another exception to the charge is predicated upon the assumption that the court asked the jury to consider the question whether this leg was so put up that there could be no movement of the bones and no shortening of the leg. An examination of the page of the transcript to which we are referred (p. 851) shows that the language used by the court was as follows: "Was it in such a shape that it would hold those bones in apposition? Was it in such a condition that there would be no unnecessary shortening of the limb? Was the leg treated by the method it was treated in such a way that there could be no movement to the side?" This language does not make the defendant an insurer of a perfect result. It recognizes that there may be some shortening of the limb without liability of the physician. It requires a doctor to set the leg and hold the bones in apposition and to guard against crowding the bones sideways. This exception is not sustained.

The defendant excepted to that part of the charge wherein the court said that the plaintiff's evidence tended to show that the setting of the leg was unskilful. In support of this exception it is urged that there was no evidence having that tendency.

But as we have seen, the defendant testified that it was a very easy case to manage and some of the doctors testified in a way tending to show that the leg was never set. This statement of the court, then, was fully warranted.

There was no error in submitting to the jury the question of negligence on the defendant's part after the plaintiff was moved to Irasburgh. The exception went upon the ground that there was no evidence tending to show such negligence. Here, again, the defendant overlooks the plaintiff's medical evidence. It was to the effect that the use of a Liston splint required the attendant to keep close watch lest the bandages become loose and allow the bones to get out of place; and that it was unsafe to leave the patient after the third week in the care of an untrained person; there was evidence that the defendant's engagement continued after the plaintiff went to Irasburgh; that he was notified that his patient was suffering much pain at the point of fracture; that this was an indication that something was wrong; and that he did not go to Irasburgh to look after the plaintiff. All this made a question for the jury, and the exception is without merit.

The defendant excepted to the charge because the court told the jury that unless there was a settlement and discharge the defendant was bound, as matter of law, to continue his attentions to the plaintiff after he went to Irasburgh. This was not the effect of the instruction. The court explained to the jury how the relation of physician and patient could be terminated, and left it to them to say whether in fact such relation had here terminated before the plaintiff went to Irasburgh, or just after. The defendant did not question the rules of law laid down, but asked only that the question be submitted to the jury. This is just what was done.

The court charged the jury that if they reached the question of damages they should include in their assessment an allowance for the plaintiff's pain and suffering, his loss of time, and his disability, so far as the defendant's negligence and want of skill was responsible therefor; and if they found that such negligence and want of skill resulted in the plaintiff's being in such a condition that he could not earn what he otherwise would, they could take that into consideration in the assessment. To this last instruction the defendant excepted on the ground that the evidence was that he was earning at the time of the trial just what he earned before the accident, and that there was no evi-

dence tending to show that he would be earning more if he hadn't suffered this injury, and that it was error to allow the jury to speculate on that subject.

This exception will have to be sustained. Of course, the earning capacity is a proper element of damage in such cases. *Lincoln* v. *C. V. Ry. Co.*, 82 Vt. 187, 72 Atl. 821, 137 Am. St. Rep. 998. But this element, like any other, must be proved. Watson Dam., § 502; and enough facts must be shown to enable the jury to make an intelligent determination of the extent of this loss. Ordinarily, with an adult, this is to be shown by proof of what the party earned before the injury and what he has been earning since. *Louisville, etc. R. R. Co.* v. *Pearson*, 97 Atl. 211, 12 So. 176; *Chicago, etc. R. R. Co.* v. *Spence*, 213 Ill. 220, 72 N. E. 796, 104 Am. St. Rep. 213; 8 R. C. L. 478. The transcript shows that the plaintiff is a traveling salesman; that he has to walk a great deal and carry his samples; that since his injury he has been lame and suffers much pain; that he has been unable to carry his samples and get around as before; that for this reason, his employer has cut down his territory; that his salary is just what it was before the accident.

Assuming that this was evidence tending to show a diminution of earning capacity within the meaning of the law, it was, standing alone, an inadequate and insufficient basis for submitting this element of damage to the jury. It does not afford the means of an intelligent estimate of the amount the assessment ought to include on this account. *Alabama F. & I. Co.* v. *Ward*, 194 Ala. 242, 69 So. 621; *Diamond Rubber Co.* v. *Harryman*, 41 Col. 415, 192 Pac. 922, 15 L. R. A. (N. S.) 775; *Birmingham Ry. L. & P. Co.* v. *Harden*, 156 Ala. 244, 47 So. 327. See *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, 74 Atl. 108, 24 L. R. A. (N. S.) 128; *Beaulac* v. *Robie et al.*, 92 Vt. 27, 102 Atl. 88. The harmful character of this error is the more apparent when it is noted that the jurors were instructed without restriction that the plaintiff was entitled to recover "all the damage that you are reasonably satisfied he will sustain in the future." Thus he was not only allowed, without sufficient evidence, to recover for what he had already lost in earning capacity, but the jury was permitted to speculate as to how his capacity to earn money would be affected in the future.

*Judgment reversed as to damages, and cause remanded for retrial on that question only.*