HARRIET T. BURTON *v.* HOLDEN & MARTIN LUMBER COMPANY
AND THE TRAVELERS INSURANCE COMPANY.
February Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed May 13, 1941.

18

*Osmer C. Fitts* for defendants.

*A. F. Schwenk* and *I. S. Kendall*, (*Barber & Barber* on brief), for claimant.

SHERBURNE, J. This is an appeal from an award made by the commissioner of industrial relations. The claimant is the widow of Frank F. Burton.

On April 9, 1940, Burton, aged 61, was examined by a physician for hospital benefit insurance, and was found to be in normal condition for a man of his age, and no material hardening of the arteries was observed. On April 11, 1940, he got a sliver in his left thumb while working in the lumber yard of defendant employer. He was first treated by a doctor on April 18 following, who testified that Burton was then suffering from an infection of the injured thumb; that the infection was localized and did not go into his system at any time, and, although serious as far as the function of the thumb was concerned, was

not serious as far as his system was concerned; that the thumb healed perfectly well, but continued to be more tender than the other thumb, which was to be expected inasmuch as there was new scar tissue there and the thumb had gone through a process of inflamation; that ten days to two weeks after the thumb had healed he was again called upon to treat Burton and found that he had difficulty in walking, had been a bit confused, was unable to get about his house without some help, and was in a weakened condition; and that he was taken to the hospital where he remained three weeks until he died of cerebral thrombosis on June 19, 1940. The doctor further testified that in his opinion the infection could have been a possible contributing cause of the thrombosis.

The questions certified for review are:

1. Whether the evidence concerning the alleged causation of death by the injury to decedent's thumb, that the infection was localized and did not go into the system at any time, and that the infection could have been a possible contributing cause of the thrombosis, is legally sufficient to support the finding that the injury to decedent's thumb resulted in his death.

2. Whether on the whole record the determination, ruling and award of the commissioner are legally warranted.

■■ There are many cases where the facts proved are such that any layman of average intelligence would know, from his own knowledge and experience, that the injuries were the cause of death. In such a case the requirements of law are met without expert testimony. *State* v. *Rounds,* 104 Vt. 442, 456, 160 Atl. 249. But where, as here, the physical processes terminating in death are obscure and abstruse, and concerning which a layman can have no well founded knowledge and can do no more than indulge in mere speculation, there is no proper foundation for a finding by the trier without expert medical testimony. *Ryder* v. *Vt. Last Block Co.,* 91 Vt. 158, 167, 99 Atl. 733; *LeClair* v. *Montpelier & Wells River R. R.,* 93 Vt. 92, 97, 106 Atl. 587; *State* v. *Rounds, supra; Howley* v. *Kantor,* 105 Vt. 128, 133, 163 Atl. 628; *Laird* v. *State of Vermont Highway Dept. et al.,* 110 Vt. 195, 199, 3 Atl. 2d. 552.

■ The mere fact that the infection in decedent's thumb resulting from the sliver could have been a possible contributing

cause of his death, does not alone warrant a finding that it was. *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 440, 129 Atl. 317; *Dooley* v. *Economy Store, Inc.,* 109 Vt. 138, 142, 194 Atl. 375. There must be created in the mind of the trier something more than a possibility, suspicion or surmise that such was the cause, and the inference from the facts proved must be at least the more probable hypothesis, with reference to the possibility of other hypotheses. *Boguski, Admr.* v. *City of Winooski,* 108 Vt. 380, 387, 187 Atl. 808; *Wellman, Admr.* v. *Wales, supra; Gero* v. *John Hancock Mut. Life Ins. Co.,* 111 Vt. 462, 476, 18 Atl. 2d. 154, 161.

The commissioner recognized that the cause of death was obscure, that expert medical testimony could alone lay a foundation for his award, and that the testimony of the doctor that the infection from the sliver could have been a possible contributing cause of death, without more, was not enough to support an award. But by taking into consideration all of the evidence, not only the expert testimony but also all the circumstances of the case as shown by the evidence, he concluded that he was justified in finding that the sliver was the cause of death.

Since expert evidence that an accident can or cannot cause a certain result may affect the conclusion to be reached (See *State* v. *Noakes et al.,* 70 Vt. 247, 255, 40 Atl. 249; *State* v. *Marino,* 91 Vt. 237, 244, 99 Atl. 882; *Baldwin* v. *Gaines,* 92 Vt. 61, 68, 102 Atl. 338), it follows that in the case of injuries so naturally and directly connected with the accident that proof of causation does not depend upon expert evidence, medical testimony of "possibility" may corroborate the other testimony. But unless the facts, outside such medical testimony, fairly warrant the conclusion that the injury resulted from the accident, causation is not established. *Madore* v. *New Departure Mfg. Co.,* 104 Conn. 709, 134 Atl. 259. See, also, *Catto* v. *Liberty Granite Co. et al.,* 101 Vt. 143, 146, 141 Atl. 684. A possible cause cannot be accepted as the operating cause unless the evidence excludes all other causes or shows something in direct connection with the occurrence. 20 Am. Jr., Evidence, Sec. 1178; *Lewis* v. *Pennsylvania R. Co.,* 220 Pa. 317, 69 Atl. 821, 18 L. R. A. (N. S.) 279, 13 Ann. Cas. 1142.

The claimant claims that medical evidence of "possibility"

is sufficient to lay the medical foundation in order to justify a finding in connection with the other evidence of a lay nature, and cites six cases from other jurisdictions to support this proposition. A careful examination of four of these cases fails to show any instance where medical evidence of "possibility" has any more force than we have above given to it. The other two of these cases are from Massachusetts, *Sullivan* v. *Boston Elevated Ry. Co.*, 185 Mass. 602, 606, 71 N. E. 90; and *De Filipo's Case*, 284 Mass. 531, 188 N. E. 245, 247. In the *Sullivan* case the plaintiff was thrown from the seat of a wagon to the ground. An expert testified that such a fall as the plaintiff testified to receiving could be an adequate cause of the appendicitis which he had following the accident. This was held sufficient, taken in connection with the plaintiff's testimony that his health was good before the accident, to warrant the jury in finding that the inflammation of the appendix was caused by the accident. Enough does not appear in the printed report to determine whether the jury would have been warranted in arriving at the same conclusion without the medical evidence of "possibility." This case was cited in *De Filpo's Case* where the court, after stating that medical testimony that a result is possible, conceivable or reasonable, without more, leaves the issue trembling in the balance, says: "Slight additional circumstances, however, may tip the scale. Expert testimony that an accident would be an adequate cause of subsequent disease has been held 'sufficient taken in connection with the plaintiff's testimony that his health was good before the accident.' " This case was one of incapacity because of inhaling granite dust over a long period, which came to a head during the last four weeks of employment. There was besides medical evidence of "possibility," medical evidence that the amount of dust inhaled during the last four weeks was sufficient to be detrimental. As the court said: "Since the condition from which he was suffering was cumulative, the dust inhaled during the last period of labor before incapacity became manifest was most likely to be decisive." It would seem that a causal connection could have been found here without the medical evidence of "possibility."

But *Sullivan* v. *Old Colony Street Ry. Co.*, 197 Mass. 512, 515, 83 N. E. 1091, cites *Sullivan* v. *Boston Elevated Ry.*

22

*Co., supra,* to what may be intended to be a proposition that medical evidence of "possibility" may make an otherwise insufcient proof of causation sufficient. This may have been the theory upon which the other two Massachusetts cases were decided. Except upon such theory the commissioner's conclusion cannot be sustained. We cannot endorse such a proposition where the evidence does not bar all other causes. Unless the other evidence fairly warrants a finding of causation or excludes all other causes, a conclusion based upon medical evidence of "possibility" would be entirely speculative.

We have here the case of a 61 year old man in a normal condition for a man of his age and with no material hardening of the arteries, who gets a serious infection in his thumb from a sliver, but the infection is localized and does not at any time go into his system, and whose thumb heals perfectly well, although continuing to be more tender than his other thumb, and who, in ten days to two weeks after his thumb has completely healed, has difficulty in walking, is a bit confused, and is in a weakened condition, and dies in three weeks of cerebral thrombosis, a little over two months after getting the sliver in his thumb. There is no evidence as to what cerebral thrombosis is, or what causes it, or if it has any relation to hardening of the arteries. We are simply told that the infection in the thumb could possibly have caused the fatal disease. In spite of the decedent's good health so soon before his death, a layman of average intelligence, from his own knowledge and experience, could have no well grounded knowledge that the sliver was the cause of death. Although told that the sliver might have caused the fatal illness, the trier could only speculate as to whether it did or not.

Our conclusions are supported by *O'Leary* v. *Scullin Steel Co.,* 303 Mo. 363, 260 S. W. 55, 61, and *Cropper* v. *Titanium Pigment Co.,* 47 Fed. 2d. 1038, 78 A. L. R. 737, cases discussing the propriety of permitting an expert to testify as to an ultimate fact. That portion of the opinion in the former case which is quoted in the latter case as follows is very pertinent:

"In the instant case the jury cannot, without expert testimony, get at the cause from the other evidence, because the evidence has no tendency to

prove to the lay mind a relation of cause and effect. It could not logically find the cause from the expert testimony if the rule in question is applied to restrict expert opinion to what might or could result from the injury, since that does not necessarily go further than a possibility, and a mere possibility does not satisfy the burden of proof. * * * It may be said the ·jury may decide which of the experts it will believe, and then find accordingly. The difficulty is that, after the jury has determined which expert it will believe and credits him, it comes to nothing, because what it has concluded to believe is merely that a certain thing 'might or could' produce a stated result or condition. In this case, the fact that a cause for which appellant is liable might or could have produced the diseased ulna does not show that a cause for which appellant was not liable did not cause it.''

*Judgment that the order of the commissioner of industrial relations awarding compensation to the claimant should be, and the same hereby is, annulled, set aside and held for naught. Let the defendants recover their costs in this Court. Let the result be certified to the commissioner of industrial relations.*